894 A.2d 120 (2006)
COMMONWEALTH of Pennsylvania, Appellee
v.
P.L.S., Appellant.
Superior Court of Pennsylvania.
Argued September 14, 2004.
Filed February 2, 2006.
Reargument Denied April 7, 2006.
*122 Patrick M. Livingston, Pittsburgh, for appellant.
Jeffery D. Burkett, Asst. Dist. Atty, Brookville, for the Com., appellee.
Before: JOYCE, BENDER and BOWES, JJ.
BOWES, J.:
¶ 1 P.L.S. appeals the judgment of sentence of twenty-six to fifty-two years imprisonment that was imposed after he was convicted by a jury of one count each of rape, attempted rape, attempted involuntary deviate sexual intercourse, statutory sexual assault, indecent assault, corruption of a minor, and endangering the welfare of a child. We affirm.
¶ 2 On February 6, 2001, the Commonwealth filed an information against Appellant containing 297 separate counts of crimes relating to his sexual abuse of his paramour's daughter, S.McK. The information later was amended to set forth only a single count of each sexual offense because the dates of the incidents of sexual abuse could not be specified.
¶ 3 At trial, the following was established. S.McK. was born on September 2, 1987, and resided on Railroad Street in a town in Pennsylvania with her mother and her sister, J.R.S., who is Appellant's biological daughter with S.McK.'s mother. Appellant, S.McK., and her mother moved into the Railroad Street residence in 1996, and Appellant vacated the residence in July 1998. S.McK. testified that the sexual abuse occurred over a two-year period at that residence from approximately September 1997 to July 1998. The child was sexually abused when her mother attended a weekly bingo game or went grocery shopping, if no other adult was present.
¶ 4 S.McK. related that Appellant would drink alcohol and then play a movie or game to keep J.R.S. occupied. Appellant would take the victim into the bedroom and force her to perform oral sex or engage in vaginal intercourse. In 2000, S.McK. reported Appellant's abuse after a cousin informed her that Appellant's actions were wrong. S.McK. explained that Appellant had told her that all young girls had this type of sexual conduct performed on them.
¶ 5 On March 8, 2002, a jury acquitted Appellant of involuntary deviate sexual intercourse but convicted him of rape, attempted rape, attempted involuntary deviate sexual intercourse, statutory sexual assault, indecent assault, corruption of a minor, and endangering the welfare of a child. Following this verdict, the court *123 ordered an assessment to determine whether Appellant was a sexually violent predator pursuant to the provisions of Megan's Law, 42 Pa.C.S. §§ 9791-9799.7. The Commonwealth presented the results of that assessment to the trial court at a May 28, 2002 hearing. On June 5, 2002, the sentencing court determined that Appellant was a SVP and sentenced him to consecutive terms of imprisonment at the statutory maximums for rape, attempted rape, corruption of a minor, and endangering the welfare of a child for a total term of imprisonment of twenty-six to fifty-two years. This appeal followed the denial of Appellant's post-sentence motion.[1]
¶ 6 Appellant raises three questions for our review. His first contention involves a supplemental instruction given to the jury by the trial court after the jury indicated that it might be deadlocked. The following facts provide the relevant context for Appellant's first claim. After approximately three hours of deliberations, the jury sent the trial court a note that read, "How long do we have to deliberate before it's considered a hung jury?" Order in accordance with Rule 1926 of Appellate Procedure, 5/13/03, at 1.[2] In response, the trial court and the jury had an exchange:
THE COURT: Members of the jury, you have now had this case for three hours approximately. Obviously, you are having some difficulty in resolving the issues in this case. On the one hand, this difficulty is the indication of the sincerity and objectivity of which you have approached your duties. On the other hand, it may be the result of confusion in your minds about the instruction I gave you on the law and about the application to the facts of this case.
Speaking through your foreperson, would you please stand.
Mr. Smith [,foreperson], does the jury require any additional or clarifying instructions on the laws that apply to this case?
[FOREPERSON]: No. I don't think so, no.
THE COURT: In your judgment is there a reasonable probability of the jury reaching a unanimous verdict?
[FOREPERSON]: It was because of lack of evidence.
THE COURT: Okay. And in your judgment is there reasonable probability that the jury could reach a unanimous verdict?
[FOREPERSON]: I don't think so.
THE COURT: Have a seat for a moment. And I want to explain this as you know, and I already went through my instructions, I will not go back through all those again. But, as I said, during the case this is certainly important to both the Commonwealth and the defendant. I appreciate all of you being here to this late hour of the night, but because the matter is of such importance and because we have spent a substantial amount of your time as well as the time of both the attorneys and witnesses I'm going to give you some further instructions and ask you to reconsider this in the jury room. Obviously, it's not only important to the Commonwealth and defendant, *124 but the county and for yourselves. If the matter were to go to hung jury this matter could be retried or would face other disposition that the county and possibly other jurors would have to be in your same place hearing the same evidence, the families, witnesses would have to travel back to the courtroom and possibly go through this exercise again. Now, I'm going to say that you realize, of course, any verdict you return must be a unanimous verdict and if we get past that point you still do have a duty to consult with one another and deliberate with a view to reaching an agreement if it can be done without violence to your own individual judgment. Each juror must decide the case for himself or herself but only after impartial consideration of the evidence with the other jurors. A juror should not hesitate to reexamine his or her own views and change his or her views if that person thinks they are erroneous. But no juror should surrender their honest convictions, the weight or effect of the evidence because of the opinion of his or her fellow jurors or for the mere purpose of returning a verdict.
Keeping those instructions in mind  and these were approximately the last instructions I gave you  because of the time already that you have invested along with everyone else I am going to send you back to the deliberation room to give further consideration to these charges that are before you. Now, if the Court can give you any assistance  again, I tell you if you have questions on the law, if there is a specific point regarding anything that I gave you before, we can consider that and reinstruct on that part. So if the Court can be of any assistance certainly write the question down and I will be more than happy to take a look at that and clarify any points of law. Just simply ask that you take some further time, examine each of your own consciences, examine the evidence in line with your own opinion and see if it is possible that you might reach a verdict on each of these.
Now, there is another possibility. If there are some that you can agree on but some you cannot I would ask that you look at each charge individually and if there is some that you believe, in fair consideration of all of your own beliefs, you can unanimously agree on one or two up to seven or eight of the individual charges, please mark those that are unanimous. If we can't reach it on others, we will reconsider that at a later time. But again, because I don't want to delay anymore, because of what I just told you about the importance and I know you are all taking this very serious[ly] from the time you have put in, I would ask you to go back, give some more consideration to your own thoughts and to each other's thoughts on each individual charge and see if there are any and maybe all that you can reach a unanimous verdict on.
. . . .
(Whereupon the jury was dismissed for further deliberations).
N.T. Charge of the Court, 3/8/02, at 106-110.
¶ 7 Appellant claims that the instruction violated his constitutional right to a fair trial because it instructed the jury to "consider matters other than the evidence presented at trial" and also "effectively coerced the jury" into rendering a guilty verdict. Appellant's brief at 14. Appellant suggests that the instruction given in this case was akin to the Allen instruction, which was criticized in Commonwealth v. Spencer, 442 Pa. 328, 275 A.2d 299 (1971).
¶ 8 Initially, we acknowledge that "it is `well established that a verdict *125 brought about by judicial coercion is a legal nullity.'" Commonwealth v. Montgomery, 455 Pa.Super. 202, 687 A.2d 1131, 1136 (1996) (quoting Commonwealth v. Chester, 526 Pa. 578, 587 A.2d 1367, 1380 (1991)). "In order to assess the propriety of the trial judge's statements, this Court must review the instructions as a whole to determine if any improper judicial wrangling occurred." Montgomery, 687 A.2d at 1136.
¶ 9 Formerly, when confronted with a deadlocked jury, a trial court typically gave a charge pursuant to Allen v. United States, 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896). In Commonwealth v. Spencer, 442 Pa. 328, 275 A.2d 299 (1971), our state Supreme Court forbade the use of the Allen charge, citing its potential for a coercive effect on the jury. In Spencer, the jury deliberated for more than five hours when the foreman reported a hopeless deadlock. The Commonwealth asked that the trial court give the jury an Allen charge, and the trial court complied. The Allen charge read substantially as follows:
[A]lthough the verdict must be the verdict of each individual juror, and not a mere acquiescence in the conclusion of his fellows, yet they should examine the question submitted with candor, and with a proper regard and deference to the opinions of each other; that it was their duty to decide the case if they could conscientiously do so; that they should listen, with a disposition to be convinced to each other's arguments; that, if much the larger number were for conviction, a dissenting juror should consider whether his doubt was a reasonable one which made no impression upon the minds of so many men, equally honest, equally intelligent with himself. If, upon the other hand, the majority were for acquittal, the minority ought to ask themselves whether they might not reasonably doubt the correctness of a judgment which was not concurred in by the majority.
Id. at 334 n. 4, 275 A.2d at 302 n. 4 (citing Allen, 164 U.S. at 501-502, 17 S.Ct. at 154) (emphasis added).
¶ 10 Our Supreme Court concluded that the emphasized language in the charge was improper because it created two constitutionally infirm implications: "(1) a minority juror should yield to the majority; and (2) those with no reasonable doubt, i.e., the majority, need not re-examine their position despite the existence of a reasonable doubt in the mind of a minority juror." Id. at 336, 275 A.2d at 304. The Court announced that an Allen charge should not be delivered after the filing date of its opinion in Spencer.
¶ 11 The Spencer Court recommended that the standard instruction promulgated by the American Bar Association (ABA) be used to replace the Allen charge in the case of a deadlocked jury. The relevant ABA standard instruction, Standard 15-5.4, is reproduced here:
Standard 15-5.4. Length of deliberations; deadlocked jury
(a) Before the jury retires for deliberations, the court may give an instruction which informs the jury:
(1) that in order to return a verdict, each juror must agree thereto;
(2) that jurors have a duty to consult with one another and to deliberate with a view to reaching an agreement, if it can be done without violence to individual judgment;
(3) that each juror must decide the case for himself or herself but only after an impartial consideration of the evidence with the other jurors;
(4) that in the course of deliberations, a juror should not hesitate to reexamine *126 his or her own views and change an opinion if the juror is convinced it is erroneous; and
(5) that no juror should surrender his or her honest belief as to the weight or effect of the evidence solely because of the opinion of the other jurors, or for the mere purpose of returning a verdict.
(b) If it appears to the court that the jury has been unable to agree, the court may require the jury to continue their deliberations and may give or repeat an instruction as provided in section (a). The court should not require or threaten to require the jury to deliberate for an unreasonable length of time or for unreasonable intervals.
(c) The jury may be discharged without having agreed upon a verdict if it appears that there is no reasonable probability of agreement.
American Bar Association, ABA Standards for Criminal Justice: Discovery and Trial by Jury, Standard 15-5.4, (3d ed. 1996).
¶ 12 An examination of the charge at issue in this case demonstrates that it contained none of the coercive elements of the Allen charge and, instead, comported with the elements of the ABA charge adopted in Spencer. The charge in the instant case did not in any way instruct the minority jurors to yield to the majority nor did the charge direct that those with no reasonable doubt need not re-examine their position despite the existence of a reasonable doubt in the mind of a minority juror.
¶ 13 Indeed, the charge was consistent with ABA Standard 15-5.4. Specifically, the charge encouraged the jurors to "consult with one another and deliberate with a view to reaching an agreement if it can be done without violence to [each juror's] own individual judgment." N.T. Charge of the Court, 3/8/02, at 108. The court stressed that "[e]ach juror must decide the case for himself but only after impartial consideration of the evidence with the other jurors," and that the jurors should be open to re-examining his or her own views and change that view if they honestly believe it to be erroneous. Id. The court emphasized that "no juror should surrender their honest convictions" or disregard the "weight or effect of the evidence because of the opinion of his or her fellow jurors or for the mere purpose of returning a verdict." Id. The court concluded the charge by asking the jury to continue deliberating and "give some more consideration to your own thoughts and to each other's thoughts on each individual charge and see if there are any and maybe all that you can reach a unanimous verdict on." Id. at 110. Nothing in the charge suggested that a juror should disregard his or her own views or opinion. Rather, the court merely asked each juror to be open to the other jurors' opinions and arguments, without doing violence to each juror's own convictions. The charge, when read as a whole, neither qualified as an impermissible Allen charge nor evidenced judicial coercion.
¶ 14 Appellant further maintains that three factors attendant to the trial court's supplemental charge established that it had a coercive effect. First, the court prematurely recalled the jury after it had deliberated only three hours. Second, the court told the jury to make a decision or government resources would have to be expended to prosecute a second trial. Finally, the jury returned a verdict shortly after the charge was given.
¶ 15 We conclude that Montgomery, supra, is controlling. There we determined that a supplemental instruction with the same attendant circumstances as here was not coercive and that a new trial was unnecessary. *127 In that case, a supplemental charge was given within two hours after deliberations commenced when the jury indicated it had reached a verdict on six of eight counts but was divided on two counts. In actuality, we stated that giving a Spencer instruction "is especially appropriate in cases such as this when the jury had been deliberating for such a short period of time prior to informing the court that it was at an impasse." Montgomery, 687 A.2d at 1136.
¶ 16 The trial court in Montgomery told the jury that, absent a verdict, the Commonwealth may have to expend money for a future trial, resulting in stress and delay. We held that this type of information is not unduly coercive, and referenced Commonwealth v. Bazabe, 404 Pa.Super. 408, 590 A.2d 1298 (1991), where the instruction included the admonition that a second trial would be an expense on the taxpayers of the county and that the court wanted to avoid one. Finally, the jury in Montgomery returned a verdict within approximately the same amount of time as the jury in this case after being given the supplemental instruction.
¶ 17 In Montgomery, we emphasized that the Spencer charge itself was not coercive and the judge never forbade the jury from returning a hung verdict. Similarly, in the instant case, although the jury's deliberations after receiving the Spencer charge were brief, the Spencer charge itself was not coercive and actually expressly informed the jury that it need not reach a consensus on all counts. Consideration of the attendant circumstances does not change our conclusion that there was no abuse of discretion by the court in giving the supplemental charge.
¶ 18 Appellant next argues that his total sentence was excessive because the sentences for each crime exceeded the aggravated range recommended in the sentencing guidelines. He argues that the court did not state sufficient reasons on the record for imposing this sentence and improperly relied upon impermissible factors such as uncharged conduct in imposing aggravated sentences. These issues challenge the discretionary aspects of Appellant's sentence.
¶ 19 Matters relating to the discretionary aspects of sentencing are not appealable as of right. Commonwealth v. Fremd, 860 A.2d 515, 524 (Pa.Super.2004). Pa.R.A.P. 2119(f) requires an appellant to set forth in his brief to this Court a concise statement of reasons relied upon in support of granting allowance of appeal with respect to the discretionary aspects of the sentence. Commonwealth v. Tuladziecki, 513 Pa. 508, 522 A.2d 17 (1987). Additionally, that concise statement "must show that there is a substantial question that the sentence imposed was not appropriate under the Sentencing Code" in order for us to grant allowance of appeal on the discretionary sentencing issues. Fremd, 860 A.2d at 524 (citing 42 Pa.C.S. § 9781(b)); Tuladziecki, supra. A substantial question exists where the appellant presents a plausible argument that the sentence violates a provision of the Sentencing Code or is contrary to the fundamental norms underlying our sentencing scheme. Commonwealth v. McNabb, 819 A.2d 54 (Pa.Super.2003).
¶ 20 In the instant case, Appellant included in his brief a concise statement in compliance with Rule 2119(f). In this statement, he argues that the trial court failed to state adequately its reasons on the record for imposing a sentence exceeding the guidelines, which raises a substantial question. Commonwealth v. Twitty, 876 A.2d 433 (Pa.Super.2005). Appellant also contends that the court considered impermissible sentencing factors, and this contention raises a substantial question. *128 Commonwealth v. Simpson, 829 A.2d 334 (Pa.Super.2003). Therefore, we grant allowance of appeal with regard to Appellant's challenges to the discretionary aspects of his sentence.
¶ 21 Initially, two observations are in order. The sentencing guidelines are advisory, and when justified, a court acts well within its discretion to sentence outside the recommended ranges. Second, prior uncharged criminal conduct can be considered for sentencing purposes under certain limited circumstances.
¶ 22 S.McK. testified that Appellant moved in with her and her mother after her father died. When the victim was ten years old, Appellant began to perpetrate horrific sexual abuse upon her on a weekly basis, forcing her to perform oral sex and vaginal intercourse. Despite the repeated abuse, Appellant was convicted of only a single count each of rape, attempted rape, attempted involuntary deviate sexual intercourse, corruption of a minor, endangering the welfare of a child, statutory sexual assault, and indecent assault.
¶ 23 Due to the nature of Appellant's convictions, he became subject to Megan's Law II and was interviewed by the State Sexual Offenders Assessment Board ("SOAB") investigator, Mr. Paul Everett. He was also interviewed and administered psychological testing by Mr. William G. Allenbaugh II, the psychologist employed by the SOAB to perform the assessment.
¶ 24 At Appellant's Megan's Law hearing, Mr. Allenbaugh testified that Appellant admitted that he may have abused S.McK. but could not remember because he was drunk. Mr. Allenbaugh also testified that Appellant "acknowledged to Mr. Everett there were two other victims." N.T. Megan's Law Hearing, 5/28/02, at 19. Without objection, Mr. Allenbaugh continued:
I believe that [the victims] came forward whenever this case came to light. And the age of the victims  the victims indicate they were like 9 or 10 when it occurred. I believe he's saying they were a little bit older than that. So, what that showed me there was a pattern of behavior over time. . . . The other thing it showed me was it appeared he developed a relationship with this girl for purpose of sexual exploitation.. . . He justified the action by saying his wife went out on him and this was his way of getting even. He was able to depersonalize himself from this.
Id. No hearsay objection was made during this portion of the testimony. Furthermore, Mr. Allenbaugh stated at the Megan's Law hearing that when he confronted Appellant with his statements, Appellant did not deny making the admissions to Mr. Everett about the two other victims.
¶ 25 The subject was revisited later in the hearing. Mr. Allenbaugh repeated that Appellant had "acknowledged [to Mr. Everett] that he was involved with two other kids, both relatives, one being a male, one being a female. There was some discrepancy, Mr. Everett checked it out." Id. at 24. At that point, Appellant's counsel objected on the basis of hearsay. The district attorney immediately stated, "If I have to put Mr. Everett up to testify to these facts that Mr. Allenbaugh used to make his assessment I will," and also indicated that he would have "no objection" to Appellant calling Mr. Everett as a witness. Id.
¶ 26 Appellant's counsel responded by objecting, based on hearsay, to the factual discrepancy involving the age of the children when the abuse occurred. The victims told Mr. Everett that they were nine to ten years old when Appellant perpetrated the abuse, while Appellant told Mr. *129 Everett that they were between thirteen and fourteen years old. Id. at 25. The court overruled the hearsay objection, and Mr. Allenbaugh continued his testimony by informing the court that pedophiles often overstate their victims' ages.
¶ 27 Mr. Allenbaugh then discussed a separate admission that Appellant made to Mr. Everett:
[Mr. Allenbaugh]: The other thing that struck me from Mr. Everett's interview was the fact [Appellant] indicated that he  and let me try and find the quote here. He identified he had a sexual problem when he was about age 16, and he told Mr. Everett, "I knew I wanted to experiment sexually. I realized I was interested in kids at approximately 18. I was interested in kids around the age of 10. I didn't really try to pick up kids. I touched the ones around me." And that was a quoted statement that he gave to Mr. Everett. When I talked to him at the jail about that statement, he called Mr. Everett a liar.
Id. at 26. Again, no objection was made to the hearsay aspect of this testimony. Mr. Allenbaugh opined that Appellant was a pedophile and a sexually violent predator as outlined by Megan's Law. Appellant did not testify at the Megan's Law hearing.
¶ 28 At the June 5, 2002 sentencing hearing, the court concluded that Appellant was a sexually violent predator with pedophilia and was required to register under Megan's Law II. It utilized the following findings of fact in connection with that determination: 1) Appellant had sexual contact with his niece, D.S., and his nephew, J.S., when they were between the ages of nine and eleven; 2) Appellant engaged in a pattern of behavior over time with victims who were between the ages of nine and ten and developed relationships with those victims for the purpose of sexual abuse; 3) Appellant was preoccupied with his sexual relationship with S.McK.; 4) Appellant was a predator in that his relationship with S.McK. was established for the primary purpose of victimization and sexual exploitation; 5) Appellant engaged in grooming behavior to prepare S.McK. for a sexual relationship; and 6) S.McK. did not consent to the sexual activity and reported it to authorities to protect her younger sister from the same abuse.
¶ 29 When offered an opportunity to address the court at sentencing, Appellant declined to do so. The court imposed a sentence above the guidelines because: 1) Appellant sexually abused two other victims but could not be prosecuted for those crimes since the statute of limitations had expired; 2) Appellant had "a problem with children," which implicated the "protection of the community;" 3) S.McK. was severely impacted psychologically by the sexual abuse; and 4) Appellant justified his abuse, according to the sentencing judge, as "spite against [S.McK.'s] mother, who[m] [he] felt was cheating on [him]. These showed to me [Appellant] had deepse[at]ed problems." N.T. Sentencing, 6/5/02, at 20-21. Since Appellant denied to Mr. Allenbaugh that he told Mr. Everett that he was attracted to ten-year-old children when he was eighteen years old, the sentencing court declined to consider it.
¶ 30 It is settled that the sentencing court, guided by valid reasons, is permitted to impose a sentence outside the guidelines.
[I]n exercising its discretion, the sentencing court may deviate from the guidelines, if necessary, to fashion a sentence which takes into account the protection of the public, the rehabilitative needs of the defendant, and the gravity of the particular offenses as it relates to the impact on the life of the victim and the community, so long as he also states *130 of record the factual basis and specific reasons which compelled him to deviate from the guideline range. The sentencing guidelines are merely advisory and the sentencing court may sentence a defendant outside of the guidelines so long as it places its reasons for the deviation on the record.
Commonwealth v. Cunningham, 805 A.2d 566, 575 (Pa.Super.2002) (citation omitted). The legislature has provided that an appellate court shall vacate a sentence and remand to the sentencing court if "the sentencing court sentenced outside the sentencing guidelines and the sentence is unreasonable." 42 Pa.C.S. § 9781(c)(3). That section also mandates that "in all other cases the appellate court shall affirm the sentence imposed by the sentencing court." 42 Pa.C.S. § 9781(c). The factors that should be weighed when we review a sentence include:
(1) The nature and circumstances of the offense and the history and characteristics of the defendant.
(2) The opportunity of the sentencing court to observe the defendant, including any presentence investigation.
(3) The findings upon which the sentence was based.
(4) The guidelines promulgated by the commission.
42 Pa.C.S. § 9781(d).
¶ 31 Furthermore, the fact that a defendant is guilty of prior criminal conduct for which he escaped prosecution has long been an acceptable sentencing consideration. However, this type of conduct can be used as a sentencing factor only under tightly-prescribed circumstances when there is evidentiary proof linking the defendant to the conduct. It is beyond peradventure that when a defendant has been exonerated in the legal system, either by a jury or on constitutional grounds, with respect to a criminal act, that act cannot be used to enhance a sentence. See Commonwealth v. Calvert, 463 Pa. 211, 344 A.2d 797 (1975); Commonwealth v. Smithton, 429 Pa.Super. 55, 631 A.2d 1053 (1993).
¶ 32 Since the inquiry herein relates to the evidentiary proof linking Appellant to the sexual abuse of two other family members, we concentrate our discussion on the caselaw relating to that question. We begin our analysis by contrasting Commonwealth v. Frank, 395 Pa.Super. 412, 577 A.2d 609 (1990), Commonwealth v. Palmer, 315 Pa.Super. 601, 462 A.2d 755 (1983), and Commonwealth v. Vernille, 275 Pa.Super. 263, 418 A.2d 713 (1980), with Commonwealth v. Chase, 365 Pa.Super. 572, 530 A.2d 458 (1987), and Commonwealth v. Sypin, 341 Pa.Super. 506, 491 A.2d 1371 (1985).
¶ 33 In Frank, a therapist was convicted of sexual abuse of an adolescent male patient. At trial, witnesses testified that the defendant had initiated sexual contact with them during counseling sessions. The sentencing court, in concluding that the defendant was not amenable to rehabilitation, indicated that the testimony of these witnesses had been weighed. The defendant averred that the sentencing court improperly considered uncharged and unproven criminal activity when fashioning its sentence. We held this allegation did not raise a substantial question because a sentencing court "may consider uncharged criminal activity in determining the appropriate sentence." Frank, supra at 622. We also indicated that if we had considered the merits, we would not have vacated the sentence.
¶ 34 In a case akin to the present one, Palmer, supra, the defendant challenged the sentencing court's consideration of the defendant's admission that he had "cased" a bank. Palmer, supra at 762. We rejected *131 his challenge, stating, "A court may consider criminal activity or preparation for crimes as factors in sentencing even though no arrest or conviction resulted." Id.
¶ 35 The same result was reached in Vernille, supra. In that case, the sentencing court was aware of the defendant's participation in other uncharged criminal conduct, and the defendant admitted to most of the facts constituting that conduct. When imposing its sentence, the sentencing court unquestionably had relied upon that uncharged conduct. We upheld the sentence, observing that "[b]road discretion is reposed in the judge to receive relevant information to make the determination of sentence." Id. at 719. We stated, "It was not improper for the [sentencing] judge to consider appellant's alleged involvement in other unlawful activity for which he was not charged, tried, or convicted." Id. We concluded that such conduct impacted on the proper sentencing factor of the protection of the public. See also Commonwealth v. Fries, 362 Pa.Super. 163, 523 A.2d 1134, 1136 (1987) ("[I]t is not improper for a court to consider a defendant's prior arrests which did not result in conviction, as long as the court recognizes the defendant has not been convicted of the charges.").
¶ 36 Not only does the caselaw authorize a sentencing court to consider unprosecuted criminal conduct, the sentencing guidelines essentially mandate such consideration when a prior record score inadequately reflects a defendant's criminal background. In 204 Pa.Code § 303.5(d), Adequacy of the Prior Record Score, the sentencing guidelines provide that the court "may consider at sentencing previous convictions, juvenile adjudications or dispositions not counted in the calculation of the Prior Record Score, in addition to other factors deemed appropriate by the court." (emphasis added).
¶ 37 On the other hand, uncharged criminal conduct may not be used for sentencing purposes when the record is devoid of the necessary evidentiary link between the defendant and the uncharged prior conduct. In Chase, supra, the defendant was convicted of three counts of terroristic threats. Three days after the conviction, a juror received a terroristic threat over the telephone. The juror could not identify the defendant as the caller, but the trial court concluded that the defendant was the perpetrator and relied upon that conduct when imposing sentence. We vacated the sentence based upon the trial court's improper consideration of that conduct.
¶ 38 Similarly, in Sypin, supra, the defendant was convicted of involuntary deviate sexual intercourse and corruption of minors involving a nine-year-old boy. While sentencing, the court referred to the disappearance and death of other children. We held that since the defendant had not been charged in connection with the disappearance or death of any child, the court's consideration of such incidents was improper. Accord Commonwealth v. Cruz, 265 Pa.Super. 474, 402 A.2d 536 (1979) (defendant could not be sentenced based on unsubstantiated accusations attributed to unnamed sources that defendant dealt large quantities of drugs).
¶ 39 In order to analyze whether the sentencing court herein properly considered Appellant's prior conduct, some matters must be clarified. Appellant implies on appeal that the proof about his abuse of the other children is premised upon legally incompetent hearsay admissions that were allegedly made by him to Mr. Everett and repeated to Mr. Allenbaugh. He also implies that he denied making admissions *132 about the prior abuse.[3] Both suggestions involve material misrepresentations of the record.
¶ 40 As to the first insinuation that hearsay established the proof, the record irrefutably reveals that the district attorney offered to have Mr. Everett testify so as to alleviate any hearsay problem. Appellant rejected this offer and in doing so, implicitly abandoned any hearsay objection. The district attorney evidenced clear resolve to present the testimony necessary to establish the truth of the allegations of prior abuse if Appellant had elected to proceed with his hearsay objection. Appellant will not now be permitted to challenge the proof of these facts based on hearsay when the Commonwealth stood ready to remedy the alleged objectionable evidence, but was relieved from doing so by Appellant.
¶ 41 As to Appellant's protestation that he denied these facts, the record is to the contrary. Appellant admitted the truth of the two victims' accusations in his conversation with Mr. Everett. At the Megan's Law hearing and during his interview with Mr. Allenbaugh, Appellant never denied admitting to Mr. Everett that he sexually abused those children. Instead, Appellant merely disputed the age of the victims when the abuse occurred. He then denied to Mr. Allenbaugh that he told Mr. Everett that when he was eighteen, he was sexually attracted to ten-year-old children, implicitly admitting to Mr. Allenbaugh that he had abused his relatives.
¶ 42 We also must observe that the trial court was allowed to rely upon the SOAB assessment information when imposing sentence. Under 42 Pa.C.S. § 9795.4(f), a copy of the SOAB assessment "shall be provided to the agency preparing the presentence investigation," and therefore, it may be utilized by the court as an aid at sentencing. Pa.R.Crim.P. § 702(A).
¶ 43 Finally, we note that Appellant, for the first time in these proceedings in a post-submission communication to this panel, raises the question of whether the use of his SOAB assessment admissions violated his Fifth Amendment right to remain silent. This position was not raised at any point at the Megan's Law hearing or at sentencing. Similarly, it was not raised in Appellant's post-sentence motion or in his Pa.R.A.P. 1925(b) statement. It has thus been waived under both Pa. R.A.P. 302 and Pa.R.A.P. 1925, and we will not consider it on appeal.
¶ 44 We now examine whether the case law analyzed above prohibited use of the prior uncharged criminal conduct during sentencing. We observe that the evidence linking Appellant to these other crimes stood unrefuted. That evidence sprang from Appellant's own mouth and was confirmed by the victims. Under Frank, Palmer, and Vernille, the sentencing court was permitted to rely upon Appellant's admissions when it imposed sentence.
¶ 45 In addition, we note that this sentence was increased beyond the guidelines not merely because Appellant could not be prosecuted for his abuse of the two other children. The sentencing court clearly found, based upon Appellant's abuse of those victims, that he was a threat to children and needed to be sentenced above the guidelines ranges for the protection of the public.
*133 ¶ 46 Finally, even if we were to conclude that the uncharged conduct should not have been considered by the sentencing court, the court offered significant other support for sentencing in excess of the guidelines in this case. Appellant sexually abused his victim nearly weekly for two years. As the sentencing court noted, the effect of this ongoing sexual abuse was substantial and long-term. The court also was appalled that Appellant would abuse a child in retaliation against the child's mother and attempt to justify his actions on that basis. See Commonwealth v. Smith, 543 Pa. 566, 673 A.2d 893 (1996) (where departure sentence was justified by independently valid reasons, even though impermissible sentencing factor also was employed in support, sentence must be affirmed). No distinction can be drawn between the present case and Commonwealth v. Twitty, supra, where we upheld a sentencing court's decision to depart upward from the guidelines based, inter alia, on the devastating effects suffered by a sexual abuse victim and the defendant's refusal to accept blame for his actions.
¶ 47 Herein, Appellant received a sentence that was authorized by the jury's verdict. Valid reasons were articulated of record by the sentencing court for its departure from the guidelines. Society was placed at greater risk due to Appellant's abuse of three children rather than one child. His propensities and the justification that he offered for his behavior make him a poor candidate for rehabilitation. Given the nature and circumstances of the offenses, Appellant's history and characteristics, the sentencing court's findings, and the guidelines, this sentence is not unreasonable under 42 Pa.C.S. § 9781(c)(3). To disturb such a sentence would present a marked departure from controlling authority.
¶ 48 In his third issue, Appellant argues that Megan's Law is punitive in nature and therefore violates the constitutional provision against ex post facto laws because the crimes in this case occurred prior to the effective date of the revised statute that became effective in 2000. Appellant's brief at 26. He also argues that Megan's Law violates "procedural due process, even after the 2000 amendments, for failing to require the Commonwealth to meet a `proof beyond a reasonable doubt' standard before imposing `sexually violent predator' status on an accused." Id.
¶ 49 Challenges to the constitutionality of a statute involve questions of law, of which our scope of review is plenary. Commonwealth v. Howe, 842 A.2d 436, 441 (Pa.Super.2004). Our standard of review is whether the trial court committed an error of law. Commonwealth v. Benner, 853 A.2d 1068 (Pa.Super.2004). "A statute is presumed to be constitutional and will not be declared unconstitutional unless it clearly, palpably, and plainly violates the constitution." Howe, 842 A.2d at 441.
¶ 50 The constitutional challenges Appellant presents herein have been addressed by our state appellate courts. The registration, notification, and counseling provisions of the revised version of Megan's Law that became effective in 2000, i.e., the current version that was applied in this case, are not punitive in nature. Commonwealth v. Williams, 574 Pa. 487, 832 A.2d 962, 984 (2003) (holding that registration, notification, and counseling provisions were not unconstitutional, but determining that penalty provisions for failure to register or verify residence were manifestly excessive and unconstitutional; however, the provision deemed unconstitutional was severed from the remainder of the statute and, in any event, is not at issue in the instant case). The Court in Commonwealth *134 v. Maldonado, 576 Pa. 101, 838 A.2d 710, 718 (2003), rejected the same due process argument presented here and concluded that the clear and convincing evidence standard used to determine if a convicted person is a sexually violent predator for purposes of the registration, notification, and counseling provisions of Megan's Law does not offend due process guarantees. See also Commonwealth v. Kopicz, 840 A.2d 342, 348 (Pa.Super.2003); Commonwealth v. Rhoads, 836 A.2d 159, 162 (Pa.Super.2003).
¶ 51 Also, in Commonwealth v. Fleming, 801 A.2d 1234, 1238 (Pa.Super.2002), we concluded that "there is no violation of any ex post facto provision in requiring registration when the acts underlying an individual's conviction occurred prior to the effective date of the registration requirements." See also Benner, 853 A.2d at 1071 (indicating that "existence of some punitive element is a prerequisite to any determination that a law is ex post facto" and registration, notification, and counseling requirements are not punitive). We rely on Fleming and the other cases cited above to conclude that Appellant's constitutional challenges to Megan's Law II are without merit.
¶ 52 May 16, 2005 Motion for Post-Submission Communication filed by the Commonwealth is denied as moot. Judgment of sentence affirmed.
¶ 53 Judge BENDER files a Concurring Opinion.
Concurring opinion by BENDER, J.:
¶ 1 I concur in the result reached by the Majority. However, I write separately to express my hesitation and concern with respect to the manner of usage by the sentencing court of the information about Appellant's niece and nephew. In addressing Appellant at sentencing, the court emphasized that the SOAB investigation "uncover[ed] that there were nephews and nieces that you sexually abused, that the statue [sic] of limitations had run, which leaves in essence three victims" (i.e., the victim in the instant case and the niece and nephew). N.T. Sentencing, 6/5/02, at 19, 20 (emphasis added). Accordingly, the sentencing court announced: "The reason for applying that maximum sentence is that I believe because there were two other victims of statutory limitations had run [sic] and because of your problems that you are a danger to society." Id. at 23 (emphasis added). This language indicates more than mere consideration of the information as an aggravating factor in imposing sentence for the purpose of protecting the public. It reveals that the court imposed punishment specifically to vindicate the abuse inflicted many years prior on Appellant's niece and nephew.
¶ 2 The Majority likens the instant case to Commonwealth v. Frank, 395 Pa.Super. 412, 577 A.2d 609 (1990); Commonwealth v. Palmer, 315 Pa.Super. 601, 462 A.2d 755 (1983); and Commonwealth v. Vernille, 275 Pa.Super. 263, 418 A.2d 713 (1980). In these cases, we stated that "[a] court may consider criminal activity or preparation for crimes as factors in sentencing even though no arrest or conviction resulted." Palmer, 462 A.2d at 762. In Vernille, for example, we concluded that the court did not err by considering uncharged conduct as a reflection of the appellant's character and as an indication that the public must be protected from the appellant's history of involvement in cases of defective titles and car thefts. Id.
¶ 3 Similarly, in Frank, we examined the merits of the appellant's complaint that the sentencing court considered uncharged and unproven conduct in imposing sentence. Frank, 577 A.2d at 622 n. 7. We *135 concluded that the trial court did not abuse its discretion because "during the sentencing proceeding, [the trial court] specifically stated that it was not considering the evidence presented during the trial concerning other criminal acts on the part of the appellant in formulating appellant's sentence." Id. So, in stark contrast to the instant case, the sentencing court in Frank specifically indicated that it was not considering the uncharged conduct in imposing the sentence. Id.
¶ 4 In sum, the courts in Vernille; Palmer, and Frank properly considered uncharged conduct in imposing sentence, whereas the sentencing court in the instant case expressly announced that it was imposing the maximum sentence because there were two additional victims for whom the statute of limitations had run, thereby imposing punishment for uncharged conduct. Indeed, as the majority notes, "it is not improper for a court to consider a defendant's prior arrests which did not result in conviction, as long as the court recognizes the defendant had not been convicted of the charges." Commonwealth v. Fries, 362 Pa.Super. 163, 523 A.2d 1134, 1136 (1987) (emphasis added). The express language of the sentencing court reveals that it did not recognize that Appellant had not been convicted of the charges, as the court imposed sentence to vindicate those victims and punish Appellant for his abuse of those victims because the statute of limitations had run.
¶ 5 I do not intend that admissions or other information obtained through the SOAB investigation be excluded from consideration in imposing sentence. Indeed, Megan's Law provides that "[i]n all cases where the [SOAB] has performed an assessment pursuant to this section, copies of the report shall be provided to the agency preparing the presentence investigation." 42 Pa.C.S. § 9795.4(f). Thus, Megan's Law contemplates that information from the SOAB investigation may properly find its way into the PSI report and, accordingly, into the hands of the sentencing judge. However, the comments made by the sentencing courts in Vernille; Palmer, and Frank satisfied us that the courts properly considered the uncharged conduct in sentencing. Here, in my opinion, however, an examination of the sentencing court's comments reveals that the court went beyond considering admissions of molestation in the distant past as factors relevant to Appellant's character or protection of the public.
¶ 6 In any event, I do agree with the Majority that other aggravating circumstances existed in this case, specifically with regard to the sexual abuse endured over a period of time by the victim, S.McK.; therefore, I would agree that it is not necessary to remand for resentencing.
NOTES
[1] This panel originally issued a decision on January 12, 2005, but granted reconsideration on March 4, 2005. The parties filed supplemental briefs after the grant of reconsideration.
[2] The note was not included in the record because it was misplaced. However, on May 13, 2003, the trial court issued an order under Pa.R.A.P.1926 correcting the omission and setting forth the substance of the jury's communication.
[3] Appellant also maintains that his SOAB interview was mandatory, which simply is incorrect. Nothing in Megan's Law requires a defendant to meet with the SOAB investigator or assessor. In fact, such assessments have been made and reviewed by this Court without the cooperation of the defendant. See Commonwealth v. Krouse, 799 A.2d 835 (Pa.Super.2002). Appellant also presents various due process arguments, which are waived under Pa.R.A.P. 302(a), and are not adequately developed.