J-S14027-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ERIC WATSON | : | |
| | : | No. 2092 EDA 2016 |
| Appellant | : | |

Appeal from the Judgment of Sentence June 7, 2016
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0003531-2015

BEFORE:   OTT, J., McLAUGHLIN, J., and RANSOM*, J.

MEMORANDUM BY McLAUGHLIN, J.:                **FILED MAY 16, 2018**

Eric Watson appeals from the judgment of sentence entered following his bench trial convictions for robbery, theft, receiving stolen property, and simple assault.[1] We conclude the trial court abused its discretion when sentencing Watson by considering facts that were not of record. We vacate the judgment of sentence and remand for resentencing.

On March 12, 2015, a male approached Christina Madden from behind and, in an "aggressive and deep" voice, said, "What do you got?" N.T., 2/18/16, at 17, 19. Madden testified at Watson's trial in this case that she felt somebody "hovering over behind" her, felt "him breathing," and was

---

*   Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 3701(a)(1)(iv), 3921(a), 3925(a), and 2701(a), respectively.

frightened. *Id.* at 17. The male grabbed Madden's purse from her wrist, causing her wrist to feel sore for "a day or two." *Id.* at 21, 31. Three days later, police officers discovered Madden's non-driver identification card and Social Security card inside a Ford Taurus. *Id.* at 68. Watson was in the passenger seat of the Taurus when police stopped the vehicle. *Id.* at 59, 68. Madden identified Watson from a photo array as her assailant. *Id.* at 30.

On February 18, 2016, following a bench trial, the trial court found Watson guilty of the above-referenced offenses.

On June 7, 2016, the trial court held a sentencing hearing. Watson made an oral motion for a continuance, noting that the Commonwealth had submitted a sentencing memorandum at 7:24 p.m. on the night before the hearing. N.T., 6/7/16, at 4, 6. The filing contained 90 pages of material, including a six-page memorandum with exhibits that included the trial transcript and docket sheets. Watson stated that he knew the Commonwealth would present a witness, Tangela Bennett, at the sentencing, and had prepared cross-examination, but requested the continuance because he did not have time to prepare following the filing of the memorandum. *Id.* at 10. He asserted he needed to conduct research, might challenge the admissibility of evidence, and might call additional witnesses. *Id.* at 5, 8. The trial court denied the continuance, reasoning that it would not accept any exhibits attached to the memorandum until Watson had an opportunity to object. *Id.* at 9-13.

At the sentencing hearing Bennett testified that she pled guilty to robbery and related offenses, *id.* at 17, and she stated that she, Watson, and Taleigh Graze were involved in a series of robberies, testifying to the details of the robberies. *Id.* at 16-57. The Commonwealth had not charged Watson with these robberies.[2]

Watson presented the testimony of Billi Charron, a social service advocate at the Adult Social Service Division of the Philadelphia Public Defender's Office. *Id.* at 75. Charron testified that she had a bachelor's degree in sociology. *Id.* at 76. In her current role she sets clients up with drug or mental health treatment and develops plans for defendants who will be sentenced. *Id.* Charron testified that she knew from Watson's records and from speaking with Watson's mother that he had a learning disability. She further stated that Watson's intellectual disability was clear upon speaking with him. *Id.* at 78. She assessed his maturity and his communication skills to be about three or four years below where they should be. *Id.* She noted he was shy, spoke slowly, was not forthcoming, and that she had to probe information from him. *Id.* Charron further noted that his social security records were only available for after he turned 18 and that the records indicated that he "had a severe learning disability but not severe enough that

---

[2] Immediately after the sentencing hearing, Watson pled guilty to a separate robbery, and received a negotiated sentence of one to three years' incarceration to run concurrent to the sentence imposed in this case. In addition, he was found to have violated probation for a prior robbery conviction, for which the trial court sentenced Watson to four years' probation, consecutive to the probation imposed in this case.

he couldn't work." *Id.* at 79. The documents stated that his learning disability was "borderline intellectual function." *Id.* She testified that she felt Watson would be a good candidate for boot camp. *Id.* at 78.

Watson also spoke, stating he was there "to accept . . . full responsibility in my actions." *Id.* at 104. He further stated he was thinking about the family members he lost and the things he missed. *Id.* He concluded that he was "[j]ust sitting in jail for 15 months out of my life when people need me, and I also need people." *Id.*

In rendering the sentence, the trial court reviewed the pre-sentence report and the sentencing memoranda filed by Watson's attorney and the Commonwealth.[3] *Id.* at 105. The court found Bennett credible and accepted her testimony about Watson's participation in other uncharged robberies in full. *Id.* It further noted that Charron was "not a licensed social worker, but a sociologist." *Id.* It stated "[t]he Court is on the other hand a social worker." *Id.* It stated that it took into account that Watson's IQ was 72, but "was surprised and amazed and felt very strongly that [Watson's] intellectual disability is not truly a true intellectual disability." *Id.* at 105-06. The trial court reasoned that the Social Security Administration did not find it to be a disability and that Watson had graduated from Philadelphia Learning Academy North. Although neither Watson nor the Commonwealth had presented any

---

[3] The trial court noted it looked at the Commonwealth's memorandum, but only reviewed the exhibits attached to the memorandum if admitted at sentencing. N.T., 6/7/16, at 105.

evidence about Philadelphia Learning Academy North, the trial court stated that the school had "a very hard program" and "has a superior reputation," and noted "the principal of that school is a green beret slash ranger who was known as a sniper." *Id.* at 106-07. Watson agreed with the trial court that the principal was a sniper and that the school had strong rules. *Id.* at 107. The court continued:

> And you can't go through that school and complete that program unless you are a top notch person. A person who can abide by structure, a person who can do all of their assignments, a person who does not venture into the hallways, a person who follows all the rules, and a person who completes all the academic assignments. One of the things that's impressive about Philadelphia Learning Academy North is that everybody wants their kid there. Everybody wants their kid there because the graduation rate is high, and the penalties are so strike [sic]. Miss three days from school, what happens? You're expelled. Hang out in the hallway with a telephone or a radio, you're expelled. Curse, you're expelled. Late, you're expelled. To get through that program, you can't have a severe learning disability, and you can't have a severe intellectual disability. So to go to that school, you have to want to graduate.

*Id.* at 107-08.

The trial court also stated that it ruled out boot camp for Watson because Watson had previously been supervised by Judge Reynolds who "is the type of guy who will adjudicate and find delinquent." *Id.* at 108. The court noted that Watson "listened to the rules of Judge Reynolds out of fear" and "[h]e graduated from Philadelphia Learning Academy North because he could abide by structure." *Id.* The trial court noted that IQ test results can change and stated that "[i]t's an unspecified learning disability, so I'm not sure if he has

dyslexia. But I don't think he does because he can read and graduated from Philadelphia Learning Academy North, that tells me a lot." *Id.* at 109.

The trial court noted that the pre-sentence investigation report said he was not susceptible or conducive to community supervision, that he has the ability to abide by the rules, as shown by his supervision by Judge Reynolds and his graduation from Philadelphia Learning Academy North, and that Watson applied to Lincoln Tech. *Id.* at 109. The trial court concluded that "when you weigh those things, I don't find a negative in his intellectual disability at all as any factor with regard to limitation of mitigation." *Id.* at 110.

The trial court then noted the facts of the case, referencing the "aggressive tone and mannerisms of [Watson]" and noting the crime involved violence. *Id.* The court further stated that it had known there were other robberies, as other bags were found in the car when Watson was arrested,[4] but it also considered Bennett's testimony regarding the "violence that [Watson] has been involved in." *Id.* The trial court noted the testimony showed "a pattern." *Id.* at 111.

The trial court stated that it considered the need to protect the public, the gravity of the offense, the impact of the victim and community, and the

---

[4] At trial, Detective Gregory Schaffling testified that when executing a search warrant on the Ford Taurus, the police recovered multiple purses. N.T., 2/18/16, at 66. Watson objected as to relevance, and the Commonwealth stated that it did not have a response. *Id.* Therefore, the evidence was not considered at trial.

defendant's rehabilitative needs, noting that the "protection of the public is strong." *Id.* at 111. It found his "propensity, dangerous propensity" as an aggravating factor. *Id.*

The trial court further noted that Watson did not express remorse for the victim, or the victims mentioned in Bennett's testimony, and concluded that "he did not mention at all that he was sorry, remorseful for the injury and harm that he's caused others." *Id.* at 113. The trial court found Watson was a "predator," who had "the ability to be somebody," but chose not to. *Id.* It stated "[t]his stuff about your intellectual disability, the Court rules that out because of Philadelphia Learn[ing] Academy North." *Id.* at 114. It found Watson chose the "easy path." *Id.* 115. It noted the "hard path would have been to move on after you were with the principal, this green beret, the sniper of Philadelphia Learning Academy North because I know at graduation he stressed for your graduation class to move on and do better. How do I know? Because I know him. How do I know? Because I go there. How do I know? Because that's what I did before I came here, working with kids, making them be the best they can be." *Id.* He referred to Watson as the wolf and the victims as sheep, noting the court "fear[ed] it might be a homicide unless we do something, unless you change, unless you begin to make the right choices." *Id.* at 116.

The trial court sentenced Watson to three to six years' incarceration and four years' probation for the robbery conviction, and a concurrent one year term of probation for the simple assault conviction. This was an above-the-

guidelines sentence, as the sentencing guidelines were 12 to 18 months, plus or minus six months. N.T., 6/7/16, at 58. The theft and receiving stolen property convictions merged for sentencing purposes.

Watson filed a post-sentence motion, arguing, among other claims, that the sentence was unreasonable and manifestly excessive, and that the trial court had erred in denying the motion to continue the sentencing hearing, in relying on offenses for which he was not arrested, in relying on facts not in the record, and in failing to following the sentencing principles set forth in 42 Pa.C.S.A. § 9721(a). The trial court denied the motion. Watson filed a timely notice of appeal.

Watson raises the following issue on appeal:

> Did not the lower court abuse its discretion and deny [Watson] due process by imposing a manifestly excessive and unreasonable sentence, where the court denied [Watson's] application for a continuance after the Commonwealth sought to introduce evidence of [Watson's] alleged unindicted crimes, expected [Watson] to accept responsibility for unindicted conduct, and relied on impermissible factors when upwardly departing from the sentencing guidelines?

Watson's Br. at 3.

Watson first maintains the trial court violated his due process rights when it denied his request to continue the sentencing hearing. He claims he first learned the Commonwealth sought to present evidence of uncharged conduct when it submitted its presentence memorandum at 7:24 p.m. on the eve of the sentencing hearing. He argues that, although he knew Bennett

would be a witness prior to the filing of the memorandum, he did not know she would testify as to the uncharged robberies.

We review the denial of a motion for continuance for an abuse of discretion. **Commonwealth v. Antidormi**, 84 A.3d 736, 745 (Pa.Super. 2014). "An abuse of discretion is not merely an error of judgment; rather discretion is abused when the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence or the record[.]" **Id.** (quoting **Commonwealth v. Boxley**, 948 A.2d 742, 746 (Pa. 2008)) (alteration in original). To obtain relief, "[a]n appellant must be able to show specifically in what manner he was unable to prepare for his defense or how he would have prepared differently had he been given more time." **Id.** (quoting **Commonwealth v. Ross**, 57 A.3d 85, 91 (Pa.Super. 2012) (*en banc*)). "We will not reverse a denial of a motion for continuance in the absence of prejudice." **Id.**

We conclude that the trial court did not abuse its discretion with respect to this issue and that Watson fails to establish prejudice. Although the Commonwealth did not file its pre-sentence memorandum until 7:24 p.m. on the eve of the sentencing hearing, the majority of the 90-page filing consisted of exhibits, including the trial transcript and docket sheets. Further, the trial court noted it would not consider any exhibit without first permitting Watson an opportunity to object. In addition, Watson did not explain to the trial court that, although he knew Bennett would testify, he did not know she would

testify as to the uncharged conduct. Rather, he said he had prepared for the witness, N.T., 6/7/16, at 10, and requested a continuance because he needed time to prepare, might challenge the admissibility of evidence, and might call additional witnesses. *Id.* at 5-8, 10. Further, Watson cross-examined Bennett and he does not explain what he would have done differently had the trial court granted him a continuance. *See* N.T., 6/7/16, at 42-51; Watson's Br. at 21-25.

Watson also claims the trial court abused its discretion in basing its sentence on Bennett's testimony regarding uncharged conduct and facts that were not in evidence, including information about Philadelphia Learning Academy North and its principal, and claims the trial court violated his Fifth Amendment right against self-incrimination when considering his lack of remorse. Such claims challenge the discretionary aspects of Watson's sentence. *See Commonwealth v. Bowen*, 975 A.2d 1120, 1122 (Pa.Super. 2009) (noting claim that court erred in considering silence when determining lack of remorse was challenge to discretionary aspects of sentencing); *Commonwealth v. Rhodes*, 990 A.2d 732, 744-45 (Pa.Super. 2009) (reliance on impermissible consideration challenges discretionary aspects of sentence).

An appeal from the discretionary aspects of sentencing is not guaranteed as a matter of right. *Commonwealth v. Mastromarino*, 2 A.3d 581, 585 (Pa.Super. 2010). Before addressing such a challenge, we must first determine:

(1) whether the appeal is timely; (2) whether [the] [a]ppellant preserved his [or her] issue; (3) whether [the] [a]ppellant's brief includes a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of sentence; and (4) whether the concise statement raises a substantial question that the sentence is appropriate under the [S]entencing [C]ode.

*Commonwealth v. Austin*, 66 A.3d 798, 808 (Pa.Super. 2013) (quoting *Commonwealth v. Malovich*, 903 A.2d 1247, 1250 (Pa.Super. 2006)); *see* Pa.R.A.P. 2119(f).

Here, Watson filed a timely notice of appeal and included in his brief a concise statement of reasons for allowance of appeal under Pennsylvania Rule of Appellate Procedure 2119(f). In addition, Watson filed a post-sentence motion. The motion, however, did not claim the trial court violated his Fifth Amendment right against self-incrimination when it stated he failed to express remorse for the victims of the uncharged crimes. Watson, therefore, waived this claim. *See Commonwealth v. Mann*, 820 A.2d 788, 794 (Pa.Super. 2003).

His post-sentence motion did claim, among other things, that the trial court erred in considering uncharged conduct and in relying on facts that were not in evidence. Therefore, we must now determine whether such claims raise a substantial question.

Watson's claims that the trial court considered impermissible factors, including uncharged conduct and relying on facts that were not in evidence, raise substantial questions. **Commonwealth v. P.L.S.***,* 894 A.2d 120, 127 (Pa.Super. 2006) (claim that court relied on impermissible factors, such as

uncharged conduct, in imposing sentence raises substantial question); ***Rhodes***, 990 A.2d at 745 (reliance on impermissible consideration raises substantial question). We will, therefore, review the merits of Watson's claims.

"Sentencing is a matter vested within the discretion of the trial court and will not be disturbed absent a manifest abuse of discretion." ***Commonwealth v. Crump***, 995 A.2d 1280, 1282 (Pa.Super. 2010). "An abuse of discretion requires the trial court to have acted with manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous." ***Id.*** "A sentencing court need not undertake a lengthy discourse for its reasons for imposing a sentence or specifically reference the statute in question, but the record as a whole must reflect the sentencing court's consideration of the facts of the crime and character of the offender." ***Id.*** at 1283.

That a defendant is "guilty of prior criminal conduct for which he escaped prosecution has long been an acceptable sentencing consideration." ***P.L.S.***, 894 A.2d at 130. The conduct, however, may be used as a sentencing factor only "when there is evidentiary proof linking the defendant to the conduct." ***Id.***

Here, the multiple bags located in the car and Bennett's testimony provided the necessary evidentiary proof to link Watson to the conduct. Therefore, the trial court properly considered the conduct as a factor in sentencing.

- 12 -

Watson also claims that the trial court considered facts that were not in evidence when sentencing him, referencing the trial court's discussion of Philadelphia Learning Academy North and its principal. This claim has merit.

A sentence is not valid "if the record discloses that the sentencing court may have relied in whole or in part upon an impermissible consideration." **Commonwealth v. Downing**, 990 A.2d 788, 793 (Pa.Super. 2010) (quoting **Commonwealth v. Karash**, 452 A.2d 528, 528-29 (Pa.Super. 1982)). Further, "the evidence upon which a sentencing court relies must be accurate" and "there must be evidentiary proof of the factor, upon which the court relied." **Id.** This Court has stated that a trial court's discretion in sentencing is not "unfettered" and that "a defendant has the right to minimal safeguards to ensure that the sentencing court does not rely on factually erroneous information." **Rhodes**, 990 A.2d at 746 (quoting **Commonwealth v. Schwartz**, 418 A.2d 637, 640-41 (Pa.Super. 1980)).

We conclude that the trial court considered facts that were not in the record when it discussed and considered its experience with Philadelphia Learning Academy North. The trial court discounted testimony based, almost exclusively, on Watson's graduation from Philadelphia Learning Academy North, and the trial court's experience with that school. There was no evidence admitted regarding Philadelphia Learning Academy North, its principal, its rules, or its graduation requirements. Although Watson agreed the principal was a former sniper and the school had strong rules, N.T., 6/7/16, at 107, the

trial court did not provide him with an opportunity to refute the trial court's inferences.

The trial court did not have to give the mitigating evidence, such as evidence that Watson had an intellectual disability, the weight Watson advocated. The trial court, however, had to consider the evidence before it and erred in discounting the mitigating evidence based on Watson's graduation from Philadelphia Learning Academy North. The trial court could not base sentencing on the graduation requirements and academic rigor of that school, where no evidence supporting such findings appears in the record.

Because the trial court relied on this impermissible factor, we remand to the trial court for re-sentencing.

Watson seeks re-sentencing before another judge. Although we find remand appropriate, we decline to order that another judge be assigned to re-sentence Watson. Watson did not file a motion for recusal before the trial court and the record does not establish that the trial judge cannot re-sentence Watson fairly.

Judgment of sentence vacated. Case remanded. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>5/16/18</u>