J-S68032-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| DAVID RIVERA | |
| Appellant | No. 2951 EDA 2014 |

Appeal from the Judgment of Sentence June 13, 2014
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0002554-2014

BEFORE:  BENDER, P.J.E., DONOHUE, J., and MUNDY, J.

MEMORANDUM BY MUNDY, J.:                    **FILED NOVEMBER 23, 2015**

Appellant, David Rivera, appeals from the June 13, 2014 judgment of sentence of 20 to 40 months of incarceration, imposed by the trial court after Appellant entered an open guilty plea to stalking.[1,2]  After careful review, we affirm.

The trial court summarized the evidence presented at the sentencing hearing as follows.

> On July 29, 2013, Appellant pled guilty to simple assault and terroristic threats against Maria Tull.  While incarcerated for th[ese] offense[s], Appellant made 132 phone calls to Ms. Tull between

---

[1] 18 Pa.C.S.A. §2709.1.

[2] The same day, at a separate docket, the trial court sentenced Appellant to a consecutive two and one-half to five years of incarceration relative to a probation violation.  Appellant did not appeal that sentence.

November 2 and November 21, 2013. Her phone number was subsequently blocked from his calls on November 23[, 2013]. Appellant also sent fourteen letters to Ms. Tull between November 12, 2013, and May 9, 2014. Ten of the letters were sent from the Philadelphia prison system with Appellant's name and prison identification number. The letters were sent both to Ms. Tull's home address and her post office box.

These letters, which were entered into evidence, contained threats against Ms. Tull and others. Several excerpts were read at sentencing:

> Letter Postmarked 11/9/13: "You'll know what I'm capable of. This will not remain like this. Thanks for all the damage you've done to my life. I imagine you must be happy at having played my feelings and mean [sic]. Because of you I have fallen into a deep depression and have tried to slit my wrists thanks to you. But you will pay for all this you done to me."

> Letter Postmarked 11/12/13: "To Maria the miserable whore: You should not have played with me. You should not have taken advantage of me. I am your worse [sic] enemy. All of this love I have for you will turn to hate. I want to see you dead. All this is for the moron you are with: Get ready to face me. He and his family are sentenced. You know I just don't talk. I am a real man. When I get out of here I'm going to look for you and you already know what will happen to you."

Ms. Tull testified in front of the indicting grand jury regarding this correspondence. Following her testimony she continued to receive threatening letters.

> Letter Postmarked 2/25/14: "What the f[***] do you have against me that you only play with me? Why do you not answer my letters or phone? I will found [sic] out what is going on with you and Tommy again. I will find out if you are seeing him again."

Letter Postmarked 3/1/14: "And I will tell you if you are pregnant it is better for you to abort it. I am telling you you will find out who I am. Tell the one who you are with to get ready because I won't let things go. I hope you stop hurting me and stop calling the bitch DA who keep singing [sic] me. Stop sending letters I send you to that bitch."

Letter Postmarked 3/7/14: "I'm telling you if you hid that you are pregnant I swear either you have a miscarriage and tell the other person that his days are numbered. You know I know your date of birth and your social security number. I don't want to hurt you but you decide if you come see me; otherwise I will not allow any more mockery."

Appellant pled guilty to the present charge of stalking and was sentenced on the same day. His mother, Maria Rivera, addressed the court during sentencing. Appellant's sister, Gina Sepulveda, also testified on his behalf. Both women's statements insisted that Ms. Tull was largely to blame for Appellant's actions. When Appellant spoke on his own behalf, he also blamed Ms. Tull for his actions.

Trial Court Opinion, 12/15/14, at 2-3 (citations to notes of testimony omitted).

In addition to the foregoing evidence, the Commonwealth stated at the sentencing hearing as follows.

What is especially concerning for the Commonwealth is [Appellant's] prior history with another woman. And I know Your Honor will take this for what it is, he was arrested, he was convicted after Municipal Court trial for simple assault and resisting arrest. The simple assault was domestic in nature. [The v]ictim in that case was Barbara Maldanado.

N.T., 6/13/14, at 29. The Commonwealth noted that Appellant appealed the conviction and it was *nolle prossed*, although Appellant was arrested for a second offense against Ms. Maldonado, and that case was withdrawn at the Municipal Court level. ***Id***. at 30-31. Appellant's counsel objected to the Commonwealth's references to Appellant's history with Ms. Maldanado, but the trial court responded, "I think it is rel[evant] to determine [an] appropriate sentence, like I heard about a lot of other things today." ***Id***. at 30.

At the conclusion of the June 13, 2014 sentencing hearing, the trial court sentenced Appellant on the stalking charge to 20 to 40 months of incarceration. On June 23, 2014, Appellant filed a motion for reconsideration of sentence, which the trial court denied on September 10, 2014. Appellant filed a timely notice of appeal on October 10, 2014.[3]

On appeal, Appellant presents the following issue.

> Did not the lower court err and abuse its discretion when it imposed an aggravated sentence based on an impermissible factor, specifically, [A]ppellant's prior arrests, which did not result in convictions, but were nonetheless treated as establishing criminal conduct?

Appellant's Brief at 3.

_____

[3] Appellant and the trial court have complied with Pennsylvania Rule of Appellate Procedure 1925.

- 4 -

We initially note that Appellant's argument on appeal pertains to the discretionary aspects of his sentence. "Pennsylvania law makes clear that by entering a guilty plea, the defendant waives his right to challenge on direct appeal all non[-]jurisdictional defects except the legality of the sentence and the validity of the plea." *Commonwealth v. Lincoln*, 72 A.3d 606, 609 (Pa. Super. 2013) (citation omitted), *appeal denied*, 87 A.3d 319 (Pa. 2014). However, when a defendant's plea is an open guilty plea, he does not waive claims regarding the discretionary aspects of the sentence "because there was no agreement as to the sentence [the defendant] would receive." *Commonwealth v. Hill*, 66 A.3d 359, 363 (Pa. Super. 2013) (citation omitted). Nevertheless, "[t]here is no absolute right to appeal when challenging the discretionary aspect of a sentence." *Commonwealth v. Tobin*, 89 A.3d 663, 666 (Pa. Super. 2014) (citation omitted). When an appellant advances an argument pertaining to the discretionary aspects of a sentence, this Court considers such an argument to be a petition for permission to appeal. *Commonwealth v. Buterbaugh*, 91 A.3d 1247, 1265 (Pa. Super. 2014) (*en banc*) (citation omitted), *appeal denied*, 104 A.3d 1 (Pa. 2014). "[A]n [a]ppeal is permitted only after this Court determines that there is a substantial question that the sentence was not appropriate under the sentencing code." *Commonwealth v. Cartrette*, 83 A.3d 1030, 1042 (Pa. Super. 2013) (*en banc*) (internal quotation marks and citation omitted).

Prior to reaching the merits of a discretionary aspects of sentencing issue, this Court is required to conduct a four-part analysis to determine whether a petition for permission to appeal should be granted. *Commonwealth v. Trinidad*, 96 A.3d 1031, 1039 (Pa. Super. 2014) (citation omitted), *appeal denied*, 99 A.3d 925 (Pa. 2014). Specifically, we must determine the following.

> (1) [W]hether appellant has filed a timely notice of appeal, Pa.R.A.P. 902, 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, Pa.R.Crim.P. [720]; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 [Pa.C.S.A.] § 9781(b).

*Id.*

Instantly, Appellant filed a timely motion for modification of sentence and notice of appeal. Also, he has included a Rule 2119(f) statement in his brief. Appellant's Brief at 8-9. We therefore proceed to determine whether Appellant has raised a substantial question for our review.

"The determination of what constitutes a substantial question must be evaluated on a case-by-case basis." *Commonwealth v. Edwards*, 71 A.3d 323, 330 (Pa. Super. 2013) (citations omitted), *appeal denied*, 81 A.3d 75 (Pa. 2013). "A substantial question exists only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary

to the fundamental norms which underlie the sentencing process." *Id.* (citations omitted). "Additionally, we cannot look beyond the statement of questions presented and the prefatory 2119(f) statement to determine whether a substantial question exists." ***Commonwealth v. Provenzano***, 50 A.3d 148, 154 (Pa. Super. 2012).

In this case, Appellant avers that the trial court abused its discretion, and asserts that the trial court "erred when it treated [Appellant's] prior arrests as having established criminal conduct." Appellant's Pa.R.A.P. 2119(f) Statement, Appellant's Brief at 9; ***see also*** Appellant's Statement of the Question Involved, *id*. at 3 (stating that the trial court erred in relying on Appellant's prior arrests "which did not result in convictions, but were nonetheless treated as establishing criminal conduct"). Given these claims, we conclude that Appellant has raised a substantial question. ***Commonwealth v. P.L.S.***, 894 A.2d 120, 130 (Pa. Super. 2006) (holding a claim that the trial court relied on impermissible factors, such as uncharged conduct in imposing its sentence, raises a substantial question), *appeal denied*, 906 A.2d 542 (Pa. 2006); ***see also Commonwealth v. Bowen***, 975 A.2d 1120, 1122 (Pa. Super. 2009) (holding a substantial question is raised when an appellant alleges that the sentencing court considered improper factors when rendering an aggravated range sentence). Upon review, however, we are not persuaded that Appellant is entitled to relief.

At sentencing, Appellant had an offense gravity score of 6 and a prior record score of 1, resulting in a guideline sentence of 6 to 14 months, plus or minus 6 months. N.T., 6/13/14, at 11, 23. Appellant's counsel requested a sentence of 6 to 23 months. *Id*. at 24, 26. The Commonwealth requested a sentence of "two to four years … because [Appellant] has essentially been terrorizing this woman since February of 2013. … [Appellant] actually got out when he pled guilty on July 29 of 2013 for committing crimes against this woman. And within two weeks, he was stalking her again, following her to her place of work, waiting in the parking lot, vandalizing her car." *Id*. at 27.

After hearing from counsel, the trial court commented on the record at length.

> I have considered the presentence, mental health report, the arguments of counsel, the history of the underlying cases, and of course what [Appellant] has to say and what the witnesses have had to say here.
>
> This case started with a negotiated – well, my involvement started with a negotiated guilty plea I believe it was July 29th of 2013 in which [Appellant] pled guilty to simple assault. I gave [Appellant] 3 to 23 months with immediate parole and …, 3 years reporting probation. [Appellant] was to go to Menergy for battered intervention program, stay-away domestic violence supervision.
>
> I believe that within a short period of time, it was August, an incident occurred, and [Appellant was] taken into custody. And we had a VOP hearing in October. And [the] original incident, [Appellant was] on I-95 going after her, and some other things, I found [Appellant] in violation October 18, 2013. And I gave [Appellant] back time on simple assault and five years' probation.

By December 5, 2013, I believe that was when [Appellant was] arrested for what occurred after I sentenced [him] on the probation. I don't know, [Appellant], what causes all this. What I hear from your family is that the complainant is a horrible person who caused this, that she is the one, and you are shaking your head as I'm saying this, that somehow she is the demon who teases you like a dog with red meat or something, and everything that has occurred here is because of what she has done.

\*\*\*

… And the decision that is going to be made here is going to be made on the evidence that I heard, the standard of law that we have in the Commonwealth of Pennsylvania. And I don't understand why you can't stay away from her.

I understand there [are] some mental health issues and I read about those. But this is beyond anything I have seen in the case. The way these cases end, you know how they usually end eventually? Murder-suicide. And [Appellant is] shaking [his] head "yes" as I'm saying that. That I don't want to happen here. …

And I don't know what to do to protect the complainant except to give [Appellant] the following sentence …

On the VOP case, terroristic threats, it's going to be two and a half to five years in state prison. … As to the new case that [Appellant] pled guilty to today, which is the stalking case, in which guidelines call for 6 to 14 months, on that case I am going to give [Appellant] a sentence of 20 to 40 months which will be consecutive to the two-and-a-half to five years. …

I don't know what else can be done except I hope that by the time when [Appellant is] released, [Appellant], you will not be doing this, and the complainant will be somewhere else. You have had numerous chances. But all I'm hearing is [it is] the complainant's fault, it is [the] complainant who did

this. Those letters were a window into who [Appellant was]. And unfortunately [Appellant's] other actions were another window. A window is – what happened with the previous woman is also a window.

***

And I don't know what else to do with [Appellant]. It is with reluctance that I give [Appellant] this sentence. But I'm fearful that without this sentence, there would be a murder-suicide because of the way [Appellant] think[s] and act[s] and what I have seen while I have had [Appellant] under my supervision.

N.T., 6/13/14, at 35-40.

Upon review, we conclude that the trial court's reasoning is supported by both the record and established case law. We have explained that "a proceeding held to determine sentence is not a trial, and the court is not bound by the restrictive rules of evidence properly applicable to trials." **Commonwealth v. Medley**, 725 A.2d 1225, 1229 (Pa. Super. 1999) (citations omitted), *appeal denied*, 749 A.2d 468 (Pa. 2000). "Rather, the court may receive any relevant information for the purposes of determining the proper penalty." **Id**. (citations omitted); **see also Commonwealth v. duPont**, 730 A.2d 970, 986 (Pa. Super. 1999) ("in sentencing, a court is not limited to consideration of information which would be admissible evidence at trial"), *appeal denied*, 749 A.2d 466 (Pa. 2000), *cert. denied*, **duPont v. Pennsylvania**, 530 U.S. 1231 (2000). Such information may include evidence of prior arrests or criminal conduct, even where a conviction did not arise from that behavior. **See P.L.S.**, *supra* ("the fact that a defendant

is guilty of prior criminal conduct for which he escaped prosecution has long been an acceptable sentencing consideration").

Based on the foregoing, we discern no error by the trial court and thus affirm the June 13, 2014 judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 11/23/2015