J-S02027-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| MARK T. STORMS | : | |
| | : | |
| Appellant | : | No. 1860 EDA 2017 |

Appeal from the Judgment of Sentence April 18, 2017
In the Court of Common Pleas of Montgomery County Criminal Division
at No(s):  CP-46-CR-0004007-2016

BEFORE:  BOWES, J., NICHOLS, J., and RANSOM, J.[*]

MEMORANDUM BY NICHOLS, J.:                    **FILED MARCH 13, 2018**

Appellant Mark T. Storms appeals from the judgment of sentence imposed after a jury found him guilty of voluntary manslaughter–unreasonable belief that killing was justifiable[1] and recklessly endangering another person ("REAP").[2]  Appellant contends that the evidence was insufficient to sustain his conviction for voluntary manslaughter because the Commonwealth failed to disprove his self-defense claim.  He also challenges the discretionary aspects of his sentence.  We affirm.

We state the facts as set forth by the trial court:

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. § 2503(b).

[2] 18 Pa.C.S. § 2705.

[Appellant] shot and killed 27-year-old Robert E. Braxton, III [("Decedent")], on April 24, 2016, during a Sunday morning service at Keystone Fellowship Church in Montgomery Township, Montgomery County. The events leading to the shooting, which occurred in the midst of numerous parishioners, began when [Decedent] entered the church in an agitated state shortly after the service had begun and moved into a row of chairs in the overflow seating area. A fellow parishioner in the row behind tapped [Decedent] on the back to alert him that he may be in a section of seats already occupied by others who had momentarily left. [Decedent] told the person not to touch him, using obscene language, and created a verbal disturbance that prompted ushers to try to calm him down.[fn2] During this time, [Decedent] told anyone who attempted to intervene to leave him alone. An associate pastor, seeing that the ushers' efforts only exacerbated [Decedent]'s agitation, had them back away and directed someone to call the police.

[fn2] [Appellant] told investigators he saw [Decedent] pushing the parishioner, but the parishioner testified at trial that [Decedent] never touched him nor got close to him.

[Appellant], who was sitting nearby with his wife and young son, did not believe enough was being done and decided to intervene.[fn3] He was armed at the time with a loaded 9-millimeter semi-automatic pistol concealed in a holster on his right hip.[fn4] [Appellant] had observed [Decedent] become agitated each time someone addressed him and believed [Decedent] would not leave the church without violence.[fn5] He admittedly approached [Decedent] not with the intent to calm him down but to get him out of the church.

[fn3] [Appellant] had no position of authority with the church at the time and was not a law enforcement officer.

[fn4] [Appellant] had a permit to carry a concealed weapon. As soon will become relevant, he also obtained a gold concealed weapon permit "badge." The unofficial badge is not issued in connection with the permit but can be obtained on the Internet.

[fn5] While [Appellant] attempted in his trial testimony to distance himself from his statement to investigators that he did not think [Decedent] would leave without violence, the

jury as fact-finder was free to disbelieve his self-serving testimony.

With the two separated by a row of chairs, [Appellant] asked [Decedent] to go outside with him. When [Decedent] refused, [Appellant] flashed his unofficial concealed weapon permit badge. [Decedent] recognized it as a fake, telling [Appellant] as much in colorful language. [Appellant] then revealed his 9-millimeter pistol. The victim reacted by punching [Appellant] in the face and proceeding toward him. [Appellant] absorbed the blow and, rather than retreat down the open aisle behind him or call for help from the hundreds of people in church, squared himself into a ready fire stance and shot the unarmed [Decedent] twice.[fn6] One of the bullets pierced [Decedent]'s heart and he died soon thereafter despite life-saving efforts by fellow parishioners and emergency medical responders.

[fn6] [Appellant] testified that [Decedent] did not have a visible weapon and no trial witness stated they ever saw [Decedent] in possession of a weapon.

Trial Ct. Op., 8/7/17, at 1-3 (citations and footnote omitted).

Appellant was arrested and charged with voluntary manslaughter and REAP in reference to the other parishioners. At the three-day jury trial, the following testimony was elicited. After the ushers backed away and left Decedent alone, one of the pastors, Rusty S. Williams, III, testified that he was not yelling. N.T., 11/1/16, at 288-89. However, after Appellant approached and asked Decedent to go outside, Williams testified he could see Decedent starting to yell and that "things were escalating again." N.T., 11/1/16, at 289-90; *see also* N.T., 11/2/16, at 16-17, 19 (Joseph McDevitt, another witness, testified that Decedent had calmed down prior to Appellant speaking with him). Williams' police statement, which the Commonwealth used to refresh his recollection and was admitted into evidence without

objection, also reflected Williams' belief that Appellant's "actions escalated the situation more than what it had to be." N.T., 11/1/16, at 315; Commonwealth's Ex. 30.

When the incident escalated and Decedent punched Appellant, Appellant shot Decedent from a distance of about eight feet. N.T., 11/1/16, at 133. Lauren Hendrie, another witness, testified that no one and nothing impeded Appellant's ability to retreat from the situation. *Id.* at 46. Jeffrey Lemon similarly testified that no person and no thing was impeding Appellant from leaving the area. *Id.* at 166.

Appellant claimed self-defense. Appellant testified he had no opportunity to retreat after being punched. N.T., 11/2/16, at 59. Appellant also believed that Decedent was "younger, bigger, faster, and stronger" than him, could kill him, and would take his gun and use it. *Id.* at 57.

The jury found Appellant guilty and the court ordered a pre-sentence investigation and held a hearing, which we discuss in further detail below. The court imposed its sentence of ten to twenty years' imprisonment for voluntary manslaughter, followed by two years' probation for REAP. The court denied Appellant's post-sentence motion.

Appellant timely appealed and timely filed a court-ordered Pa.R.A.P. 1925(b) statement. He raises the following issues, which we have reordered for ease of disposition:

> 1. Whether the evidence was insufficient to disprove, beyond a reasonable doubt, Appellant's affirmative defense of self-defense?

2. Whether the sentencing court abused its discretion in deviating above the applicable standard and aggravated guideline range to impose a sentence of ten to twenty years for voluntary manslaughter without providing any statement of reasons for its extreme departure from the guideline range?

3. Whether the sentencing court abused its discretion in imposing a manifestly unreasonable sentence above the applicable guideline range for the charge of voluntary manslaughter based solely upon factors already taken into account by the guidelines, without giving adequate consideration to mitigating factors such as Appellant's clear remorse, his cooperation with law enforcement, and witness descriptions of Appellant as an otherwise peaceable man of good character?

Appellant's Brief at 5.

In support of his first issue, Appellant argues that the Commonwealth failed to present evidence that in the seconds after he was punched, he could reasonably retreat. Appellant's Brief at 31. In Appellant's view, the Commonwealth did not establish the unreasonableness of his fear that Decedent could gain control of and use Appellant's gun. *Id.* at 32. He cites testimony that Decedent's erratic behavior and punching of Appellant support the reasonableness of his belief that Decedent would seriously harm him and others. In addition, Appellant contends that the Commonwealth failed to prove that he initiated the use of deadly force. *Id.* Appellant argues that the record established that he was "calmly speaking" to Decedent, before Decedent decided to "suddenly and unexpectedly" punch Appellant. *Id.*

The trial court initially argues that Appellant waived his challenge to the sufficiency of evidence disproving his claim of self-defense because he failed

to identify the precise element or elements at issue.[3]  Trial Ct. Op., 8/7/17, at 8.  Regardless, in the court's view, the record established that Appellant did not have a reasonable belief that he had to use deadly force to protect the hundreds of people in the room and that by displaying his gun, Appellant provoked the use of force.  The court notes that Decedent punched Appellant only after he brandished his weapon.  *Id.* at 9.  Finally, the trial court states Appellant could have safely retreated without having to shoot Decedent.

Our standard of review follows:

> Because a determination of evidentiary sufficiency presents a question of law, our standard of review is *de novo* and our scope of review is plenary.  In reviewing the sufficiency of the evidence, we must determine whether the evidence admitted at trial and all reasonable inferences drawn therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, were sufficient to prove every element of the offense beyond a reasonable doubt.

*Commonwealth v. Williams*, 176 A.3d 298, 305-06 (Pa. Super. 2017) (citations omitted).

By way of background,

> The use of force against a person is justified when the actor believes that such force is immediately necessary for the purpose of protecting himself against the use of unlawful force by the other person.  When a defendant raises the issue of self-defense, the Commonwealth bears the burden to disprove such a defense beyond a reasonable doubt.  While there is no burden on a defendant to prove the claim, before the defense is properly at issue at trial, there must be some evidence, from whatever

---

[3] We decline to find waiver, as the trial court discerned and responded to Appellant's argument in its opinion.  *Cf. Commonwealth v. Laboy*, 936 A.2d 1058, 1060 (Pa. 2007).

source, to justify a finding of self-defense. If there is any evidence that will support the claim, then the issue is properly before the fact finder.

***Commonwealth v. Torres***, 766 A.2d 342, 345 (Pa. 2001) (citations omitted). After such evidence is adduced, the Commonwealth has the burden of disproving Appellant's defense beyond a reasonable doubt. ***Id.***

Under the Crimes Code, self-defense falls under the defense of justification, which is a complete defense to criminal liability. ***See*** 18 Pa.C.S. § 502. Section 505(a) of the Code provides:

The use of force upon or toward another person is justifiable when the actor believes that such force is immediately necessary for the purpose of protecting himself against the use of unlawful force by such other person on the present occasion.

***Id.*** § 505(a). Section 505(b)(2) of the Crimes Code provides as follows:

The use of deadly force is not justifiable under this section unless the actor believes that such force is necessary to protect himself against death [or] serious bodily injury . . . ; nor is it justifiable if:

(i) the actor, with the intent of causing death or serious bodily injury, provoked the use of force against himself in the same encounter; or

(ii) the actor knows that he can avoid the necessity of using such force with complete safety by retreating . . . .

***Id.*** § 505(b). Thus, an actor's belief that he needs to use deadly force must be reasonable. If the actor actually, but unreasonably, believes that deadly force is necessary to protect himself against death or serious bodily injury, he exercises what is referred to as "imperfect self-defense." ***Commonwealth v.***

*Tilley*, 595 A.2d 575, 582 (Pa. 1991). In sum, the Commonwealth meets its burden of disproving self-defense

> if it proves any of the following: that the slayer was not free from fault in provoking or continuing the difficulty which resulted in the slaying; that the slayer did not reasonably believe that he was in imminent danger of death or great bodily harm, and that it was necessary to kill in order to save himself therefrom; or that the slayer violated a duty to retreat or avoid the danger.

*Commonwealth v. Mouzon*, 53 A.3d 738, 740-41 (Pa. 2012) (brackets, citations, and quotation marks omitted).[4]

Instantly, we agree with the trial court that the record establishes Appellant escalated the situation by interjecting himself and brandishing his weapon, which led to Decedent punching Appellant and subsequently his death. As set forth above, Williams and McDevitt testified that prior to Appellant's actions, Decedent was calm; afterwards, Decedent was aggravated. N.T., 11/1/16, at 289-90; N.T., 11/2/16, at 16-17, 19.

Moreover, Hendrie and Lemon testified that Appellant could have safely retreated. *See* N.T., 11/1/16, at 46, 166. Appellant, therefore, could have avoided any use of deadly force. *See Mouzon*, 53 A.3d at 740-41. While Appellant testified he believed he had no opportunity to retreat, N.T., 11/2/16,

---

[4] With respect to the defendant's reasonable belief, there are two factors: "(1) the defendant's subjective belief that he had an honest, bona fide belief that he was in imminent danger, to which expert testimony is admissible; and (2) the objective measurement of that belief, *i.e.*, the reasonableness of that particular belief in light of the facts as they appear, to which expert testimony is inadmissible." *Commonwealth v. Rivera*, 108 A.3d 779, 792 (Pa. 2014).

at 59, it was well within the fact-finder's province to favor the other witnesses' testimony to the contrary. ***See Commonwealth v. Brown***, 52 A.3d 1139, 1163 (Pa. 2012). Therefore, Appellant's claim that the Commonwealth failed to disprove self-defense merits no relief.

We briefly set forth the following as background for resolving Appellant's last two issues. At Appellant's sentencing hearing, the court acknowledged that the standard range sentence for voluntary manslaughter, including a deadly weapon enhancement, is fifty-four to seventy-two months' imprisonment. N.T., 4/18/17, at 6-7. Numerous witnesses testified; the Commonwealth moved additional victim impact statements into the record. The court also reviewed Appellant's December 24, 2016 sentencing statement, which was not made part of the record. N.T., 4/18/17, at 75. According to the court, in the statement, Appellant discussed three different occasions in which he "interjected [himself] into a circumstance which could have caused [his] death to save others." ***Id.*** at 78. The court stated that Appellant's actions during those occasions were "problematic" because Appellant perceived himself "as some type of hero that injects himself into certain situations[.]" ***Id.*** at 80. The court continued:

> Certainly, this time, it didn't work out.
>
> No luck here. Or did these never happen and this was an opportunity to carry out that fantasy of yours. I don't know. That is a mystery. I guess we'll never know. All I know is that I believe you are a danger to society.

In the present case, I have considered your age, the information about you that you have presented to me and that I found in the pre-sentence investigation, and that evidence that I found as the trial judge in considering your sentence.

I can't imagine -- I cannot imagine the pain of losing a child. This is probably the most difficult day I have had as a judge. This is such a heartbreaking circumstance, to lose a child in such a violent and unusual circumstance. I can't seem to get it out of my mind, [Appellant], that -- we can't forget that we are talking about the loss of a young man's life.

And the jury has spoken. I have to balance your rehabilitative needs, the safety of society, as well as the nature of the crime when I determine your sentence.

I listened to all the testimony today. And I have come to this conclusion. I have read your letters of support as well. I know the heartache your family must feel. How strange it is that such religious families on both sides of the aisle are placed in this horrible, horrible heartbreaking situation.

With that said, please stand.

* * *

There has been no dispute as to your personal background and circumstances found to be set forth in the pre-sentence investigation except the ones [Appellant's counsel] mentioned [when they had corrected the PSI report earlier].

As I said, the jury has spoken. And after considering these factors, I find that there would be an undue risk that during the period of probation or partial confinement you will commit another crime. You, sir, are in need of correctional treatment that can be provided most effectively by your commitment to an institution.

And once again, a lesser sentence would depreciate the seriousness of your crime. I, therefore, find that a sentence of total confinement is proper.

N.T., 4/18/17, at 80-82.

- 10 -

Turning to Appellant's arguments, he maintains that the court's sentence must be supported by a clear record and reflect a "dispassionate decision to depart" from the guidelines. Appellant's Brief at 22 (quoting *Commonwealth v. Rodda*, 723 A.2d 212, 216 (Pa. Super. 1999)). Appellant opines the court's reasoning, as set forth above, does not justify an upward deviation from the recommended sentence in the sentencing guidelines. *Id.* at 25. Appellant assails the absence of any factual basis to support the court's conclusion that he is a "danger to society." *Id.* He concludes that the court failed to acknowledge that the sentence departed from the guideline range. *Id.* Appellant argues that the court double-counted factors, such as Decedent's death, that are already taken into account by the sentencing guidelines. *Id.* at 27. The court, Appellant contends, overlooked mitigating factors such as his age and cooperation with the police. *Id.*

A discretionary challenge to a judgment of sentence is not appealable as of right. *Commonwealth v. Luketic*, 162 A.3d 1149, 1159 (Pa. Super. 2017). We will exercise our discretion to consider the issue only if (1) the appellant has filed a timely notice of appeal; (2) he has preserved the sentencing issue at the time of sentencing or in a motion to reconsider and modify his sentence; (3) he presents the issue in a properly framed statement in his brief under Rule 2119(f) of the Rules of Appellate Procedure, pursuant to *Commonwealth v. Tuladziecki*, 522 A.2d 17 (Pa. 1987); and (4) in the words of Section 9781(b) of the Sentencing Code, 42 Pa.C.S. § 9781(b), "it

appears that there is a substantial question that the sentence imposed is not appropriate under this chapter." *See, e.g.*, *Commonwealth v. Haynes*, 125 A.3d 800, 807 (Pa. Super. 2015). "A defendant presents a substantial question when he sets forth a plausible argument that the sentence violates a provision of the sentencing code or is contrary to the fundamental norms of the sentencing process." *Luketic*, 162 A.3d at 1160 (citation omitted).

Here, Appellant has timely appealed and timely filed a post-sentence motion preserving the sentencing issue he seeks to raise on appeal. *See Luketic*, 162 A.3d at 1159. Appellant has also preserved his issue in his Rule 2119(f) statement. *See id.* We therefore address whether Appellant has raised a substantial question.

> A defendant presents a substantial question when he sets forth a plausible argument that the sentence violates a provision of the sentencing code or is contrary to the fundamental norms of the sentencing process. One of the fundamental norms in the sentencing process is that a defendant's sentence be individualized. . . .
>
> > . . . [S]entencing must result both from a consideration of the nature and circumstances of the crime as well as the character of the defendant.
>
> Thus, a sentencing court abuses its discretion when it considers the criminal act, but not the criminal himself. The Sentencing Code prescribes individualized sentencing by requiring the sentencing court to consider the protection of the public, the gravity of the offense in relation to its impact on the victim and the community, and the rehabilitative needs of the defendant, and prohibiting a sentence of total confinement without consideration of the nature and circumstances of the crime[,] and the history, character, and condition of the defendant[.]

In [**Commonwealth v. Devers**, 546 A.2d 12 (Pa. 1988)], the Supreme Court set forth the following regarding the two-part duty of sentencing judges:

> The first responsibility is a fact-finding responsibility: the judge must be sure he had enough information. The second responsibility is an application-and-explanation responsibility: the judge must apply to the information he has gathered the guidelines specified in the Sentencing Code, 42 Pa.C.S. §§ 9701 *et seq.*, and explain how the sentence he has selected is responsive to, and reflects the standards embodied in, those guidelines. If the judge fails to fulfill these responsibilities, we must vacate the sentence and remand for resentencing.

**Luketic**, 162 A.3d at 1160. A substantial question exists when the claim is that the court imposed a sentence outside the guidelines and by double-counting factors already considered by the guidelines. **Commonwealth v. Goggins**, 748 A.2d 721, 728 (Pa. Super. 2000) (*en banc*).

Here, Appellant argued the court "failed to articulate sufficient reasons" for imposing a ten-year minimum sentence and the court double-counted the impact of Decedent's death and Appellant's unreasonable belief in the use of force. Appellant's Brief at 20-21. This argument raises a substantial question, which we review on the merits. **See Goggins**, 748 A.2d at 728.

Section 9721 of the Sentencing Code states that in sentencing a defendant

> the court shall follow the general principle that the sentence imposed should call for confinement that is consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant. The court shall also consider any guidelines for sentencing and resentencing adopted by the Pennsylvania Commission on Sentencing . . . . In every

case where the court imposes a sentence or resentence outside the guidelines adopted by the Pennsylvania Commission on Sentencing . . . , the court shall provide a contemporaneous written statement of the reason or reasons for the deviation from the guidelines to the commission . . . . Failure to comply shall be grounds for vacating the sentence or resentence and resentencing the defendant.

42 Pa.C.S. § 9721(b).

Section 9781(d) sets forth the factors considered by this Court in evaluating the reasonableness of a sentence outside the guidelines:

**(d) Review of record.—**In reviewing the record the appellate court shall have regard for:

(1) The nature and circumstances of the offense and the history and characteristics of the defendant.

(2) The opportunity of the sentencing court to observe the defendant, including any presentence investigation.

(3) The findings upon which the sentence was based.

(4) The guidelines promulgated by the commission.

42 Pa.C.S. § 9781(d). Where a pre-sentence investigation report exists, we shall "presume that the sentencing judge was aware of the relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors." *Commonwealth v. Walls*, 926 A.2d 957, 967 n.7 (Pa. 2007) (citation omitted). "Even if a sentencing court relies on a factor that should have not been considered, there is no abuse of discretion when the sentencing court has significant other support for its departure from the sentencing guidelines." *Commonwealth*

*v. Sheller*, 961 A.2d 187, 192 (Pa. Super. 2008); *Commonwealth v. P.L.S.*, 894 A.2d 120, 133 (Pa. Super. 2006).

In this case, the court complied with Section 9721(b). The court noted that the standard range sentence was fifty-four to seventy-two months in prison for voluntary manslaughter. The court, as set forth above, stated reasons for imposing a minimum sentence of ten years' imprisonment. The court acknowledged Appellant's PSI and stated it considered his age, rehabilitative needs, protection of the public, and the nature of the crimes at issue, as well as their impact on the community. N.T., 4/18/17, at 80-82. Because a PSI exists, which the court acknowledged reviewing, we also presume that the court weighed the information contained within the PSI. *See Walls*, 926 A.2d at 967 n.7.

We acknowledge that the court did not explicitly state it was departing from the recommended sentence set forth in the guidelines, but the court explicitly expressed its reasons for imposing the sentence it did. N.T., 4/18/17, at 80-82. Even if the court improperly double-counted factors, such as Decedent's death, the court indicated it considered the impact his death had on family and friends and that it was troubled by Appellant's tendency to insert himself into circumstances that could cause his death and portray him as a hero. Thus, any departure from the sentencing guidelines was supported by independently valid reasons. *See, e.g.*, *Sheller*, 961 A.2d at 192. For

these reasons, we affirm the judgment of sentence. ***See generally*** 42 Pa.C.S. § 9781(d).

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/13/18