J-S42015-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| KHALIF SKINNER | : | |
| | : | |
| Appellant | : | No. 3156 EDA 2019 |

Appeal from the Judgment of Sentence Entered June 14, 2019
In the Court of Common Pleas of Lehigh County
Criminal Division at No(s):  CP-39-CR-0004727-2018

BEFORE:  PANELLA, P.J., OLSON, J., and MUSMANNO, J.

MEMORANDUM BY PANELLA, P.J.:                **FILED NOVEMBER 24, 2020**

Khalif Skinner appeals from the judgment of sentence entered on June 14, 2019, in the Court of Common Pleas of Lehigh County, made final by the denial of post-sentence motions on October 10, 2019. The trial court imposed an aggregate term of 13 to 48 months' incarceration, after a jury convicted him of two counts of recklessly endangering another person ("REAP").[1] The court also found him guilty of the following summary offenses – following too closely, driving at an unsafe speed, careless driving, and reckless driving.[2] On appeal, Skinner challenges the sufficiency of the evidence supporting his

---

[1] 18 Pa.C.S.A. § 2705.

[2] 18 Pa.C.S.A. §§ 3310(A), 3361, 3714(A), and 3736(A), respectively.

convictions and the discretionary aspects of his sentence. After careful review, we affirm.

There is very little dispute as to the facts of this disastrous accident. The primary conflict in the litigation was whether Skinner's actions on that fateful date were consonant with a criminally culpable state of mind. On October 30, 2017, at approximately 5:30 p.m., Jeffrey and Chieko Flowers, from Chesapeake, Virginia, were traveling to their hotel in West Allentown/Fogelsville, Pennsylvania on the Route 222 bypass after spending time with family in Allentown. Jeffrey was driving the couple's white Toyota Prius and Chieko was sitting in the front passenger seat.

Traffic became heavier as it was rush hour, and they started to slow down in speed, almost coming to a complete stop near the Krocks Road intersection area. At that moment, a 16-foot long Penske box truck, driven by Skinner, crashed into them from behind. The impact of the crash caused a chain reaction, in which the Flowers' car rear-ended a red Toyota Prius, driven by Mary Moran.

Prior to the accident, Skinner and his employee, Delano Bostic, were en route to deliver furniture to a customer in Allentown. While driving, Skinner asked Bostic to look for his phone so he could inform the customer of their estimated time of arrival. Bostic started looking on his side of the truck when he glanced over and saw that Skinner was also looking for the phone. Bostic indicated that when he glanced back up, the accident occurred.

Witnesses stopped to help or seek assistance for those involved. Pennsylvania State Police Trooper James Terry subsequently arrived at the scene. He first interviewed Skinner. Skinner stated he thought he was going approximately 40 miles per hour, which was below the 45 mile per hour speed limit. He believed he had either looked down or reached down to get his cell phone so that Bostic could call the customer. Skinner also stated that when he looked back up, the traffic had slowed and he attempted to decrease his speed but was unable to do so in time to avoid a collision with the Flowers' car.

As a result of the crash, Jeffrey died at the Lehigh Valley Hospital due to blunt force trauma. Chieko survived, but suffered from extensive bruises on the front of her body as well as cuts and bruises on her hands and feet.

Skinner was charged with multiple crimes related to the incident, including but not limited to homicide by vehicle, involuntary manslaughter, and two counts of REAP, one each for the Flowers and Moran. At the jury trial, both Chieko and Moran testified, as well as Trooper Terry and an accident reconstruction expert, Pennsylvania State Trooper William Hoogerhyde.

Trooper Hoogerhyde testified that based on pre-crash data approximately five seconds prior to impact, the Flowers' car was traveling two and a half miles per hour and the car was braking. He could not determine if the brake lights were on at time of impact because they were destroyed during the collision. Furthermore, based on a formula, the trooper was able to

ascertain, to a reasonable degree of scientific certainty, that Skinner was going a minimum speed of 36.59 miles per hour at the time of impact. Trooper Hoogerhyde opined that Skinner's failure to keep his eyes on the road caused the crash. Lastly, he conceded that sun glare would have affected all drivers at that location.

Skinner took the stand and testified. He stated that after he found his phone in the center console and handed it to Bostic, he looked back up and was confronted with sun glare. Skinner averred that the sun glare obscured his vision. In response, he started tapping on his brakes, but he could not see the Flowers' car until he was on top of it. He believed he was going approximately 30 to 32 mph at the time. Skinner also indicated that due to the weight of the truck, he could not slam on the brakes or swerve the truck because such actions would have caused more damage than just trying to brake.

The following day, the jury found Skinner guilty of the two REAP offenses and not guilty of vehicular homicide and involuntary manslaughter. The court then found him guilty of numerous summary offenses, following too closely, driving at an unsafe speed, careless driving, and reckless driving.

On June 14, 2019, the court sentenced Skinner to a term of one to two years' imprisonment for the REAP conviction concerning the Flowers, and a consecutive term of one month to two years' incarceration for the REAP

- 4 -

conviction as to Moran.[3] The court imposed fines and costs regarding the remaining convictions. Skinner filed a post-sentence motion, which was denied on October 10, 2019. This appeal followed.

In his first issue, Skinner contends there was insufficient evidence to support his REAP convictions because the evidence did not demonstrate that "he acted with the necessary criminal intent to permit these convictions to stand." Appellant's Brief, at 19. Specifically, he states:

> The accident occurred in the late afternoon when the setting sun was clearly in the eyes of the drivers proceeding southbound on Route 222. Mr. Skinner testified to his being nearly blinded by the glare as he approached the area where other vehicles were slowing or stopped because of the heavy traffic and it was only at the last instant that he was able to see the vehicle in front of him. The presence of the sun glare was acknowledged in the testimony of Trooper Hoogerhyde when he stated that it was present for all the drivers at that time of day. The testimony from the same witness indicated that the minimum speed for Mr. Skinner's truck at the time of impact was 36.59 miles per hour which was nearly 10 miles under the applicable 45 mph for that roadway. Further, Mr. Skinner's testimony was that he acted to slow the truck but not to swerve out of his lane as he knew the danger that could occur from a sudden shift of the truck either to the left or right as the contents of the vehicle could shift and overturn it. Unfortunately, this led to the impact but his action nonetheless showed an awareness of the dangers involved in his operating the vehicle and his desire to avoid a possible accident resulting from any hard turning of the wheel.
>
> There was no testimony that the truck was being operated in any negligent or otherwise dangerous manner or that it was doing nothing more than traveling with the general flow of traffic prior to the incident. Mr. Skinner was driving a fully functional vehicle with no known defects or limitations in operation.

---

[3] The court ordered that Skinner's sentence was to be served consecutively to a sentence he is currently serving for an unrelated matter. **See** N.T., 6/14/2019, at 17.

***Id.***, at 22-23.

We review challenges to the sufficiency of the evidence with the knowledge that the jury is given great leeway in assessing the credibility and weight of any evidence presented:

> The determination of whether sufficient evidence exists to support the verdict is a question of law; accordingly, our standard of review is *de novo* and our scope of review is plenary. In assessing [a] sufficiency challenge, we must determine whether viewing all the evidence admitted at trial in the light most favorable to the [Commonwealth], there is sufficient evidence to enable the factfinder to find every element of the crime beyond a reasonable doubt. [T]he facts and circumstances established by the Commonwealth need not preclude every possibility of innocence.... [T]he finder of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part[,] or none of the evidence.

***Commonwealth v. Edwards***, 177 A.3d 963, 969-970 (Pa. Super. 2018) (quotation marks and citations omitted). Therefore, we will not disturb the verdict "unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances." ***Commonwealth v. Bruce***, 916 A.2d 657, 661 (Pa. Super. 2007) (citation omitted).

A person commits the crime of REAP "if he recklessly engages in conduct which places or may place another person in danger of death or serious bodily injury." 18 Pa.C.S.A. § 2705. "[REAP] requires the creation of danger, so the Commonwealth must prove the existence of an actual present ability to inflict

harm to another." **Commonwealth v. Shaw**, 203 A.3d 281, 284 (Pa. Super.

2019) (citation omitted), *appeal denied*, 215 A.3d 964 (Pa. 2019).

> A person acts recklessly with respect to a material element of an offense when he consciously disregards a substantial and unjustifiable risk that the material element exists or will result from his conduct. The risk must be of such a nature and degree that, considering the nature and intent of the actor's conduct and the circumstances known to him, its disregard involves a gross deviation from the standard of conduct that a reasonable person would observe in the actor's situation.

18 Pa.C.S.A. §302(b)(3).

Here, the trial judge concluded there was sufficient evidence to support

Skinner's REAP convictions:

> Regarding the challenge to the sufficiency of the evidence, I find the Commonwealth presented sufficient evidence that [Skinner] acted recklessly. Unlike homicide by vehicle and involuntary manslaughter – for which [Skinner] was found not guilty – recklessly endangering another person does not require [him] to engage in an unlawful act. Rather, it requires reckless conduct. The Commonwealth presented evidence that [Skinner], while operating a box truck, looked down to find his cell phone and hand[ed] it to his passenger. In doing so, [Skinner] did not see traffic stopped in front of him and he struck Mr. Flowers['s] vehicle, resulting in his death. There was sufficient evidence that [Skinner] was engaging in unsafe driving to a degree that placed others in danger of death or serious bodily injury. **See Commonwealth v. Sullivan**, 864 A.2d 1246, 1250 (Pa. Super. 2004).

Order, 10/10/2019, at unnumbered 1-2 n.1.

We agree with the trial court's analysis concerning the sufficiency of

Skinner's REAP convictions. Skinner points to evidence that weighs in his favor

– he was potentially blinded by the sun glare as he approached a heavy traffic

area, was driving approximately ten miles under the speed limit, and acted to

avoid a greater accident by refraining from swerving into another lane.[4] However, notably missing from Skinner's argument is the fact that he took his eyes off the road to search for his cell phone.

A review of the record supports this point. Bostic, the passenger in Skinner's truck, testified that he saw Skinner "looking for his phone" and after that, Bostic glanced back up and the truck struck the Flowers' vehicle, which then hit Moran's vehicle. N.T., 5/14/2019, at 76. Moreover, Skinner admitted to Trooper Terry that "he had looked down or reached down to get his cell phone or find his cell phone so that he could hand it to the passenger of the vehicle so that the passenger could make a phone call." N.T., 5/15/2019, at 9. Lastly, the expert witness, Trooper Hoogerhyde, opined to a reasonable degree of scientific certainty that, based on his review of all the evidence in the case, Skinner "looked away from the roadway, and the crash occurred." *Id.*, at 57.

Viewing this evidence in the light most favorable to the Commonwealth, when Skinner looked away from the road to search for his phone while operating a loaded box truck in the middle of rush hour, the jury was entitled

---

[4] To the extent Skinner asks this Court to reweigh the evidence in his favor, we decline to do so. ***See Commonwealth v. Lewis***, 45 A.3d 405, 409 (Pa. Super. 2012) (appellant's "argument that his version of the events was more credible than the Commonwealth's version goes to the weight of the evidence, not its sufficiency."). Additionally, the jury, sitting as the fact-finder, was free to assess each witness's testimony and to believe all, part, or none of the evidence. ***See Commonwealth v. Golphin***, 161 A.3d 1009, 1018 (Pa. Super. 2017).

to find that he consciously disregarded a substantial and unjustifiable risk that resulted from his conduct. Moreover, the evidence could reasonably support a finding that his actions constituted "a gross deviation from the standard of conduct that a reasonable person would observe" under the circumstances. 18 Pa.C.S.A. §302(b)(3). Accordingly, we conclude there was sufficient evidence to support Skinner's REAP convictions, and Skinner's argument fails.

In his second issue, Skinner challenges the discretionary aspects of his sentence, claiming that his sentence for Count 3, the REAP conviction as to the Flowers couple, exceeded the aggravated range of the Sentencing Guidelines.[5] He therefore believes the sentence constituted an abuse of discretion because the court failed "to set forth appropriate legal or factual reasons for the sentence and the guideline deviation." Appellant's Brief, at 24.

Challenges to the discretionary aspects of sentencing do not guarantee a petitioner's right to our review. *See Commonwealth v. Allen*, 24 A.3d 1058, 1064 (Pa. Super. 2011).

> An appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction by satisfying a four-part test: (1) whether appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. [720]; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code.

---

[5] We note Skinner does not raise any argument concerning his sentence regarding the remaining REAP conviction.

*Commonwealth v. Swope*, 123 A.3d 333, 337 (Pa. Super. 2015) (citation omitted).

In this case, Skinner filed a timely notice of appeal, and his brief included a statement of reasons relied upon for allowance of appeal, as is required by Pa.R.A.P. 2119(f). **See** Appellant's Brief, at 15. He also preserved the issue in a post-sentence motion. **See** Defendant's Post Sentence Motion, 6/21/2019, at ¶¶ 17-24. Therefore, we must determine whether Skinner has raised a substantial question.

"The determination of what constitutes a substantial question must be evaluated on a case-by-case basis." **Commonwealth v. Prisk**, 13 A.3d 526, 533 (Pa. Super. 2011). "A substantial question exists only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." **Id.** (internal citations omitted).

Here, Skinner's argument raises a substantial question. **See Commonwealth v. Garcia-Rivera**, 983 A.2d 777, 780 (Pa. Super. 2009) ("This [C]ourt has found that a claim the trial court failed to state its reasons for deviating from the guidelines presented a substantial question for review."). Thus, we review the merits of Skinner's claim.

Skinner argues that "even though he was acquitted of all charges related to the death of Mr. Flowers, … the Court nonetheless sentenced him to the

maximum sentence … in lieu of any sentence on the more serious charges."
Appellant's Brief, at 24-25. Additionally, he states the trial court "failed to
adequately state its reasons on the record for imposing a sentence that
exceeded the Sentencing Guideline[s], that it disregarded relevant mitigating
facts and factors, and ... whether the factors cited by the [c]ourt for the
maximum sentence were not factors already considered in establishing the
Sentencing Guideline[s]." *Id.*, at 25.

We have a deferential standard of review for discretionary aspects of
the sentence claims:

> Sentencing is a matter vested in the sound discretion of the
> sentencing judge, and a sentence will not be disturbed on appeal
> absent a manifest abuse of discretion. In this context, an abuse
> of discretion is not shown merely by an error in judgment. Rather,
> the appellant must establish, by reference to the record, that the
> sentencing court ignored or misapplied the law, exercised its
> judgment for reasons of partiality, prejudice, bias or ill will, or
> arrived at a manifestly unreasonable decision.

*Commonwealth v. Shugars*, 895 A.2d 1270, 1275 (Pa. Super. 2006).

While the court is required to consider the sentence ranges set forth in
the sentencing guidelines, it is not bound by them. *See Commonwealth v.
Yuhasz*, 923 A.2d 1111, 1118 (Pa. 2007). The court may depart from the
"guidelines, if necessary, to fashion a sentence which takes into account the
protection of the public, the rehabilitative needs of the defendant, and the
gravity of the particular offense as it related to the impact on the life of the
victim and the community[.]" *Commonwealth v. Eby*, 784 A.2d 204, 206
(Pa. Super. 2001) (citation omitted). If the court imposes a sentence outside

the guideline ranges, it must place adequate reasons for the deviation in the record. *See Commonwealth v. P.L.S.*, 894 A.2d 120, 129-130 (Pa. Super. 2006). Nevertheless, we only vacate an outside-the-guidelines sentence if the "sentence is unreasonable[.]" 42 Pa.C.S.A. § 9781(c)(3).

> In making this "unreasonableness" inquiry, we consider:
>
> (1) The nature and circumstances of the offense and the history and characteristics of the defendant.
>
> (2) The opportunity of the sentencing court to observe the defendant, including any presentence investigation.
>
> (3) The findings upon which the sentence was based.
>
> (4) The guidelines promulgated by the commission.

42 Pa.C.S. § 9781(d).

Here, the sentencing judge had the benefit of a presentence investigation report ("PSI"), the victim impact statements, and the probation officer's recommendation of an above-the-aggravated-range sentence. The judge also heard Skinner's own statements during allocution, and argument from both parties. *See* N.T., 6/14/2019, at 2-21.

Skinner had a prior record score of zero. *See* N.T. 6/14/2019, at 3. The offense gravity score for the REAP offense was a three. *See id.* The standard range was restorative sanctions to one month with a plus or minus of three months for the aggravated and mitigated ranges. *See id.* The sentencing judge sentenced Skinner above the aggravated range to a term of one to two years' incarceration for the REAP conviction. *See id.*, at 16.

The judge explained his rationale on the record as follows:

> This sentence is in the aggravated range due to the fact that the victim, Jeffrey Flowers, died as a result of [Skinner's] conduct, and his passenger, Chieko Flowers, was injured as a result of Skinner's conduct.
>
> That is my reasoning for it, so if my sentence is in excess - it has to be in excess of the aggravated range. This sentence is in excess of the aggravated range for those reasons.

*Id.*, at 16-17. Furthermore, the judge found that while Skinner accepted responsibility, he had to consider "not just the action but the result" in the case, which was that one of the victims died due to Skinner's acts. *Id.*, at 18.

In its order denying Skinner's post-sentence motion, the judge subsequently opined:

> Regarding the motion to reconsider sentence, I find I did not err in sentencing [Skinner]. While the sentence on count 3 was above the aggravated range, it was within the statutory limits, and I placed my reasons for deviating from the guidelines on the record. I considered all requisite factors in determining the sentence, and I had the benefit of a pre-sentence investigation report.

Order, 10/10/2019, at 1-2 n.1 (citations omitted).

We find Skinner's assertions are belied by the record. While Skinner suggests that the judge disregarded certain mitigating factors, the judge had the benefit of the PSI and we can reasonably infer the judge considered those factors. *See Commonwealth v. Walls*, 926 A.2d 957, 967 n.7 (Pa. Super. 2007) ("[W]here pre-sentence reports exist, we shall continue to presume that the sentencing judge was aware of the relevant information regarding the

defendant's character and weighed those considerations along with mitigating statutory factors.") (citation omitted).

Our review of the record demonstrates that the judge considered the applicable Sentencing Guidelines, and determined that an upward departure from the guidelines was proper, particularly given the gravity of the offense as it related to the impact on the life of Jeffrey Flowers. We find the judge sufficiently stated his reasons on the record for imposing a sentence that exceeded the Sentencing Guidelines.

Furthermore, those reasons are clearly rational reasons to deviate from the Guidelines. While the jury acquitted Skinner of the more serious charges in this case, there is no dispute that this accident was the cause of Jeffrey Flowers's death. This constitutes the worst possible result of the crime of REAP. While this result does not necessarily require a deviation from the guidelines, it certainly is sufficient to support one. Accordingly, we cannot conclude that the sentence imposed is excessive. Therefore, Skinner's claim that the sentencing judge abused his discretion in sentencing him outside the guidelines merits no relief.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>11/24/2020</u>