J-S35036-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| ROBERTO RODRIGUEZ III | : | |
| | : | |
| Appellant | : | No. 1354 MDA 2022 |

Appeal from the Judgment of Sentence Entered May 31, 2022
In the Court of Common Pleas of York County
Criminal Division at No(s):  CP-67-CR-0004109-2020

BEFORE:   PANELLA, P.J., McLAUGHLIN, J., and COLINS, J.[*]

MEMORANDUM BY COLINS, J.:                    **FILED: MAY 29, 2024**

Roberto Rodriguez III appeals from the judgment of sentence imposed following a jury convicting him of aggravated assault.[1] For this offense, the trial court imposed 90 to 180 months' imprisonment. On appeal, Rodriguez challenges two evidentiary determinations made by the trial court and further contends that the lower court abused its discretion at sentencing by relying on an impermissible factor. We find no merit to any of Rodriguez's contentions and affirm.

By way of background,

> On June 11, 2020, Meredith Keltner[, the victim,] was on the balcony of the apartment where she was staying when [Rodriguez] said hello to her. Keltner classified herself as homeless and traveling at the time of the incident. After hanging

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] ***See*** 18 Pa.C.S. § 2702(a)(1).

out and talking with [Rodriguez] in the backyard, Keltner agreed to go to a motel room with [Rodriguez] so they could continue hanging out and talking. Both Keltner and [Rodriguez] stayed overnight in the motel room together, having sexual intercourse with each other one time. Drugs and alcohol were also involved. Keltner described [Rodriguez] as polite until he turned hostile when he wanted to have intercourse again and she refused. Keltner testified she saw a silver gun that [Rodriguez] pulled out of a drawer.

The next morning around six, [Rodriguez] and Keltner left the motel, first stopping at a gas station then back at the East Princess Street apartment where they picked up [future, but later severed for trial, codefendant Francisco Torres Rivera, referred to at trial as] Esteban. [Rodriguez] was driving with Keltner in the front passenger seat and Esteban was in the back passenger seat behind Keltner.

Once in the vehicle, Esteban directed [Rodriguez] where to drive, sometimes in English and other times in Spanish. After driving west outside the city of York into a more rural area, Esteban had [Rodriguez] turn onto Smyser Road and then had [Rodriguez] make a U-turn. [Rodriguez] testified it took him three times to complete the U-turn.

Keltner testified that [Rodriguez] told her to get out of the car, opened her door, and again told her to get out of the car. Keltner stated that [Rodriguez] initially did not allow her to take her belongings because he was going to take them. However, Keltner did grab her belongings and exited the vehicle. She testified that she was walking away when [Rodriguez] told her to drop her bags, turn around, and put her hands up. Prior to blacking out, Keltner testified she remember[ed] seeing [Rodriguez] was holding the same gun she saw in the motel and said [Rodriguez] [was] the one who shot her.

[Rodriguez] testified that Esteban ordered Keltner to get out of the car. When Keltner refused, Esteban spoke to [Rodriguez] in Spanish, causing [Rodriguez] to tell Keltner to "get the fuck out the car." Esteban then got out, opened the front passenger-side door, and grabbed Keltner's arm to pull her out.

[Rodriguez] testified that Esteban had Keltner go to the front of [the] car, drop her bag, and put her hands up. As Keltner

- 2 -

started to turn around, Esteban shot her first in her face and then continued to shoot as she was falling to the ground. Esteban then jumped into the car and pointed the gun towards [Rodriguez]. In Spanish, Esteban told [Rodriguez] to "drive, drive." [Rodriguez] stated he then drove away, feeling the car bump as it ran over [Keltner].

[Rodriguez] drove straight home. Esteban told [Rodriguez] not to tell anybody and to have the car cleaned, which [Rodriguez] did.

Trial Court Opinion, 12/14/22, at 2-5 (record citations omitted).

At trial, relevant to one of Rodriguez's issues on appeal, Rodriguez's counsel attempted to admit testimony from Amber Lynn Shaffer, someone who had lived with Esteban on Princess Street, who allegedly would have testified, *inter alia*, that: (1) Esteban was a sex trafficker and drug dealer; (2) she was trafficked by Esteban; (3) her "going rate" for sexual transactions was one to two bundles of drugs, which she approximated as having a market value of one hundred dollars; and (4) Esteban had confided in her as to how many people he had shot in his capacity as a trafficker. While she was permitted to take the stand, because the proffered sex-related testimony varied from Rodriguez's pending assault and murder charges, the court prohibited Shaffer from mentioning Esteban's purported trafficking activities.

Although Rodriguez was charged with multiple offenses[2] stemming from the incident outlined above, the jury convicted him of a single count of

---

[2] 18 Pa.C.S. § 901(a)/2502(a) (attempt to commit first-degree murder); 18 Pa.C.S. § 903(a)/2502(a) (conspiracy to commit first-degree murder); 18 Pa.C.S. § 2702(a)(1) (aggravated assault – extreme indifference to the value of human life); 18 Pa.C.S. § 2702(a)(4) (aggravated assault – deadly weapon).

aggravated assault. After sentencing, Rodriguez filed a post-sentence motion, which, following a hearing, was denied. Thereafter, Rodriguez filed a timely notice of appeal. Correspondingly, Rodriguez and the trial court have complied with their respective obligations under Pennsylvania Rule of Appellate Procedure 1925. As such, we proceed to review the merits of Rodriguez's appeal.

On appeal, Rodriguez presents three issues:

1. Did the lower court abuse its discretion in excluding testimony establishing that Esteban was a sex trafficker who had a motive to harm Keltner, the victim, because she failed to turn over money after having sex with Rodriguez where this "third-party guilt" evidence was more probative than prejudicial and was essential to Rodriguez's defense?

2. Did the lower court abuse its discretion in allowing the Commonwealth to elicit from Rodriguez that he had "access to guns" where the evidence permitted no inference that this testimony concerned a gun that could have been used in the charged crimes?

3. Did the lower court abuse its discretion in imposing an aggravated-range sentence at least in part because Rodriguez had not "taken responsibility" for offenses of which he continued to maintain his innocence?

*See* Appellant's Brief, at 4.

As it pertains to the first claim, Rodriguez concedes that he "admitted he ran over Keltner, and aggravated assault based on the injuries this inflicted was the only offense of which he was convicted." *Id*., at 44. However, given his claim of duress wherein he indicated that "Esteban forced him to drive over Keltner," *id*., he argues that testimony illuminating Esteban's sex trafficking,

- 4 -

which he frames as third-party guilt, was material to his defense.

In reviewing a trial court's evidentiary ruling, we are guided by the following standard:

> The admissibility of evidence is a matter within the sound discretion of the trial court and will be reversed only where there is a clear abuse of discretion. Our standard of review of a challenge to an evidentiary ruling is therefore limited. Abuse of discretion is not merely an error of judgment, but rather where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill will.

*Commonwealth v. Williams*, 241 A.3d 1094, 1101 (Pa. Super. 2020) (citation omitted).

Germane to this specific inquiry:

> In the case of third person guilt evidence, the relevant inquiries into admissibility are: Does the third person guilt evidence have a tendency to make the existence of any fact that is of consequence to the determination of the issue, e.g., the defendant's culpability, more probable or less probable than it would be without the evidence. Pa.R.E. 401. If so, is the probative value of the third person guilt evidence outweighed by any danger of "confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."

*Commonwealth v. Yale*, 249 A.3d 1001, 1022 (Pa. 2021); *see also id*. (noting that "determining the admissibility of third person guilt evidence requires nothing more than the traditional inquiries prompted by our rules of evidence[]").

Rodriguez asserts:

> Shaffer was prepared to testify that she lived with Esteban in a room at the Princess Street house, she was a sex trafficking victim of Esteban's, she saw Esteban and Keltner in bed together,

> Esteban was "a crack cocaine dealer and a pimp," and "he would set up meetings between her and Hispanic men to have sex for drugs, and then she would have to bring those drugs back to Esteban, and if she did not do so, he would get angry and punish the girls working for him[.]"

Appellant's Brief, at 37 (record citation omitted). To Rodriguez, this testimony "would have established Esteban's motive for shooting Keltner and coercing Rodriguez into running her over[.]" *Id*.

In its opening statement, the Commonwealth indicated "all of the[] injuries were caused to [Keltner] over a hundred dollars." N.T., 3/22/22, at 129. Rodriguez claims that this amount of money "was the money Keltner should have turned over to Esteban after receiving it in exchange for sex." Appellant's Brief, at 39. Rodriguez then goes on to recount his own testimony wherein he said that Esteban offered him, via text message, sexual relations with a white woman for a quantity of drugs, but that, as to the events leading up to Keltner's injuries, Esteban never gave him permission to speak with Keltner nor did he pay Esteban to spend the night with her. *See* N.T., 4/1/22, at 827-29.

Rodriguez then concludes that, in accordance with *Yale*, *supra*, the evidence of Esteban's sex trafficking from Shaffer "was … highly relevant … in showing Esteban's motive to shoot Keltner" and had a weighty probative value that, to the extent it would possibly mislead the jury, could have been counterbalanced with a limiting instruction. *See* Appellant's Brief, at 39-40; *see also* N.T., 3/31/22, at 588 (defense counsel proposing a limiting

instruction "that evidence of this nature is offered for the sole purpose of whether it creates a reasonable doubt about [Rodriguez's] guilt[]"). Rodriguez bolsters his conclusion by highlighting Shaffer's proposed testimony establishing that "Keltner lived at the same address as Esteban and that she had seen the two in bed together." Appellant's Brief, at 41 (citing N.T., 3/30/22, at 556). With this testimony, in tandem with the Commonwealth's reference to Keltner's injuries arising out of a one-hundred-dollar dispute, the jury could have reasonably inferred that Keltner was "also a sex trafficking victim." Appellant's Brief, at 41.

Assuming *arguendo* that Keltner was a sex trafficking victim, it is entirely unclear how that fact – the main thrust of Rodriguez's argument – "suppl[ies] evidence of Esteban's motive[ and *ipso facto*] made Rodriguez's guilt less likely." **Id**. Rodriguez does not explain how Esteban's motive, which is presumed to be one of animosity towards Keltner for a perceived wrong, affects any material component of his duress affirmative defense.

The lower court found Shaffer's testimony to be irrelevant under Pennsylvania Rule of Evidence 401, as the nexus between Shaffer's proposed testimony and the facts underpinning Keltner's injuries was, at best, tenuous. **See** Trial Court Opinion, 12/14/22, at 8. As analyzed by that court:

> The proffer of Shaffer's testimony regarding Esteban's involvement in sex trafficking was about Shaffer being trafficked, not the victim, Meredith Keltner[.] The fact Shaffer saw Keltner in bed with Esteban is also not relevant, nor does it support the inference that Keltner was also being trafficked by Esteban.

Additionally, Shaffer's proffered testimony about the estimated cost of one hundred dollars for one or two bundles of drugs she would receive when trafficked is far too attenuated to connect Keltner being shot over one hundred dollars. The similarity is merely the amount of one hundred dollars, one of which is an unsubstantiated estimate.

[Rodriguez] testified he believed Esteban was a "pimp" who would traffic women in exchange for drugs or money, but [Rodriguez] did not specifically testify that he knew [Keltner] was being trafficked out by Esteban. [Rodriguez] testified he was texting with Esteban during the time [Rodriguez] was with Keltner. Those text messages indicate Esteban was aware [Rodriguez] was with Keltner. Esteban warned [Rodriguez] to make sure he wears a condom. Those text show no indication that Esteban was expecting payment from [Rodriguez] for having sex with Keltner. Also, there is no mention of one hundred dollars or anything about payment from [Rodriguez] to Esteban for his time with Keltner.

On the one hand, you have Shaffer's proffered testimony that payment was accepted through one or two bundles of drugs, with an estimated cost of one hundred dollars; not testimony about actual cash being exchanged for sex nor about how Shaffer would know the actual cost of one or two bundles of drugs. Moreover, you have Keltner's testimony that she was hurt over one hundred dollars of actual money, not over one hundred dollars' worth of drugs. Keltner also testified that she lent Esteban seventy dollars. Therefore, Shaffer's testimony is not "sufficiently similar" enough to be admissible as evidence of third-party guilt.

*Id*., at 8-9 (record citations omitted).

We agree with the lower court insofar as Shaffer's proffer, describing Esteban's involvement in sex trafficking as it pertained to Shaffer's own experiences, was not relevant to establish Rodriguez's culpability. In particular, Rodriguez's own testimony implicitly disclaims, or is wholly silent on, any connection between Keltner and sex trafficking. **See** N.T., 4/1/22, at 773-74 (Esteban knowing that Rodriguez and Keltner were together and

telling Rodriguez to wear a condom), 780 (Rodriguez testifying that he did not "pay for" Keltner that evening). Without any clear connection between Keltner and Esteban's alleged sex trafficking, exclusion of testimony describing the latter was proper.

Even if there were evidentiary support for Keltner having been a sex trafficking victim, Rodriguez fails to explain how the proffered testimony falls under the auspice of Esteban's third-party guilt. The impact of Keltner's status, and derivatively, Esteban's apparent reason to harm her, does not have any discernable effect on Rodriguez's culpability. Stated differently, the reasons behind Esteban's intention to harm Keltner have absolutely no bearing on Rodriguez's actions, wherein he admitted to running Keltner over with a vehicle, or Rodriguez's attendant affirmative defense of duress. *See* 18 Pa.C.S. § 309(a) ("It is a defense that the actor engaged in the conduct charged to constitute an offense because he was coerced to do so by the use of, or a threat to use, unlawful force against his person or the person of another, which a person of reasonable firmness in his situation would have been unable to resist.").

Had there actually been an error from the lower court in having not admitted Shaffer's testimony, exclusion thereof would be considered harmless:

> Harmless error exists if the state proves either: (1) the error did not prejudice the defendant or the prejudice was *de minimis*; or (2) the erroneously admitted evidence was merely cumulative of other untainted evidence which was substantially similar to the

erroneously admitted evidence; or (3) the properly admitted and uncontradicted evidence of guilt was so overwhelming and the prejudicial effect of the error was so insignificant by comparison that the error could not have contributed to the verdict.

***Commonwealth v. Fulton***, 179 A.3d 475, 493 (Pa. 2017) (citation omitted).

Rodriguez admitted that he was the one who ran over Keltner. ***See*** N.T., 4/1/22, at 812. Rodriguez explained that, as the driver, after Keltner had been shot five times, Esteban's "gun was facing [him], and [he] had no choice. [He] was in shock. [He] was scared." ***Id***., at 813. As alluded to, *supra*, Esteban's possible motive to harm Keltner, through the lens of Shaffer's proposed attenuated testimony, does not have any bearing on Rodriguez's duress affirmative defense. Moreover, Rodriguez was not foreclosed from testifying that Esteban threatened him with a weapon. Therefore, any potential prejudice Rodriguez experienced is as, at most, *de minimis*.

In his second claim, Rodriguez faults the court for having allowed testimony indicating that he had access to guns. ***See generally*** N.T., 4/1/22, at 803-04 (following an objection and off-the-record discussion, Rodriguez answering "[y]es[,]" to the question asking whether he had "access to guns back when [the underlying incident] happened[]"). Rodriguez avers that "[t]his evidence was irrelevant, overly prejudicial, and constituted improper bad acts evidence." Appellant's Brief, at 46. Rodriguez further argues that evidence in this domain should have not been allowed because Rodriguez's general access to guns did not have anything to do with a likely weapon being used in this case.

Pennsylvania Rule of Evidence 401 defines relevant evidence as evidence that has "any tendency to make a fact more or less probable than it would be without the evidence; and … the fact is of consequence in determining the action." Pa.R.E. 401. Pennsylvania Rule of Evidence 403 allows for the exclusion of "relevant evidence if its probative value is outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Pa.R.E. 403. Furthermore, "[e]vidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Pa.R.E. 404(b)(1). However, "[t]his evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. In a criminal case this evidence is admissible only if the probative value of the evidence outweighs its potential for unfair prejudice." Pa.R.E. 404(b)(2).

Two of the cases cited by Rodriguez, ***Commonwealth v. Edwards***, 903 A.2d 1139 (Pa. 2006), and ***Commonwealth v. Christine***, 125 A.3d 394 (Pa. 2015), involved the admission of a physical weapon into evidence, not, as is the case here, testimony. Notwithstanding that distinction, ***Christine*** emphasizes that "[a] weapon not 'specifically linked' to the crime is generally inadmissible; however, the fact 'the accused had a weapon or implement

- 11 -

suitable to the commission of the crime charged … is always a proper ingredient of the case for the prosecution." 125 A.3d at 400 (citation omitted) (alteration in original). While the admission of a weapon cannot be made on the basis of similarity, "if the particular gun possessed cannot be proven to be the one used in the crime[,] [t]hat it was possessed may allow the inference it could have been used." *Id*., at 401.

The third case cited by Rodriguez, **Commonwealth v. Holt**, 273 A.3d 514 (Pa. 2022), appears to be the most apt. Therein, a witness testified that the defendant had been seen "in possession of a semi-automatic firearm prior to the shooting." *Id*., at 535. That witness saw, on one occasion, the defendant with "a .40 caliber black firearm with a loaded clip" and, on another occasion, with "a different weapon in the waistline of [his] pants." *Id*. Our Supreme Court found that the former instance was properly admitted, pursuant to the similar-weapons exception, because "[t]he probative value of the evidence that [the witness saw the defendant] in possession of a .40 caliber firearm shortly before the murder outweighed its potential for unfair prejudice. The evidence demonstrated that [the defendant] had possession of the firearm shortly before the offense and thus, had access to the firearm to commit the shooting." *Id*., at 539. In effect, the Commonwealth properly demonstrated that the weapon possessed *could* have been used in the crimes that defendant had been facing. However, as to the latter occasion, "[b]ecause the Commonwealth introduced no other evidence supporting an inference that

this was the weapon used in the commission of the crime," *id*., admission of that statement was erroneous.

Rodriguez argues that, while there was testimony adduced at trial establishing the recovery of casings coming from .40 caliber firearm, *see* N.T., 3/29/22, at 168, and, too, Keltner indicated that the firearm used against her was silver, *see id*., at 242, the Commonwealth's generic query of whether Rodriguez had access to unspecified guns, without any further qualification, violated the "inference" precept espoused in *Holt*. In other words, without any defined connection between the Commonwealth's question and known descriptors of the weapon, despite the Commonwealth not knowing "what gun was used in this case," N.T., 4/1/22, at 802, the Commonwealth failed to establish the requisite "specific link" that could possibly tie Rodriguez to the weapon that had been used in the crimes he was facing.

However, we find that *Holt* is readily distinguishable. The mere questioning of Rodriguez's "access to" weapons is a wholly distinct inquiry than what the witness testified to in *Holt*. The present case involves neither the Commonwealth asking a question that attempts to glean information as to a particularized weapon nor a witness describing a defendant's involvement with a specific weapon. Furthermore, we highlight a principle espoused in *Commonwealth v. Hicks*, which noted that "mere possession of a firearm, where it lawfully may be carried, is [not, by itself,] suggestive of criminal activity." 208 A.3d 916, 937 (Pa. 2019). Therefore, following the logic of

*Hicks*, it strains credulity to find that inquiry into Rodriguez's general access to firearms, despite his arguments to the contrary, implied any level of criminality whatsoever.

Even if the admission of this question and corresponding answer was erroneous, it was harmless error because the prejudice incurred via the admission of Rodriguez's own testimony that indicated his access to guns was *de minimis*. **See Fulton**, 179 A.3d at 493. Although it was established, through other testimony, that a firearm was used against Keltner, despite being charged with firearms-related offenses, Rodriguez was found not guilty of those crimes. Instead, the crime for which he was convicted, aggravated assault related to the running over of Keltner, was wholly unrelated to his possession of a firearm. Therefore, without any indication that his driving-related conviction was reasonably impacted by Rodriguez's admission to having access to firearms, we find that Rodriguez's admission did not significantly influence the jury nor contribute to its ultimate verdict.

In his third, and final, issue, Rodriguez challenges the discretionary aspects of his sentence. Accordingly, we employ a well-settled set of precepts:

> Challenges to the discretionary aspects of sentence are not appealable as of right. **Commonwealth v. Leatherby**, 116 A.3d 73, 83 (Pa. Super. 2015). Rather, an appellant challenging the sentencing court's discretion must invoke this Court's jurisdiction by (1) filing a timely notice of appeal; (2) properly preserving the issue at sentencing or in a motion to reconsider and modify the sentence; (3) complying with Pa.R.A.P. 2119(f), which requires a separate section of the brief setting forth a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of a sentence; and (4) presenting a

substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S. § 9781(b), or sentencing norms. *Id*. An appellant must satisfy all four requirements. *Commonwealth v. Austin*, 66 A.3d 798, 808 (Pa. Super. 2013).

*Commonwealth v. Miller*, 275 A.3d 530, 534 (Pa. Super. 2022), *appeal denied*, 302 A.3d 626 (Pa. 2023). Rodriguez has satisfied the first two requirements. As such, we turn to the Rule 2119(f) statement included in his brief to discern whether a substantial question has been raised.

We determine whether there is a substantial question on a case-by-case basis. *See Commonwealth v. Crawford*, 257 A.3d 75, 78 (Pa. Super. 2021). "We cannot look beyond the statement of questions presented and the prefatory Rule 2119(f) statement to determine whether a substantial question exists." *Crawford*, 257 A.3d at 78-79 (quoting *Commonwealth v. Radecki*, 180 A.3d 441, 468 (Pa. Super. 2018)) (brackets omitted). A substantial question is presented where:

> ... an appellant advances a colorable argument that the sentence imposed is either inconsistent with a specific provision of the Sentencing Code or is contrary to the fundamental norms which underlie the sentencing process. At a minimum, the Rule 2119(f) statement must articulate what particular provision of the code is violated, what fundamental norms the sentence violates, and the manner in which it violates that norm.

*Commonwealth v. Mastromarino*, 2 A.3d 581, 585–86 (Pa. Super. 2010) (quoting *Commonwealth v. Bullock*, 948 A.2d 818, 826 n. 6 (Pa. Super. 2008)) (citation omitted).

In his statement, Rodriguez claims that the court abused its discretion

in imposing a sentence in "the aggravated range at least in part on the ground that he had not 'taken responsibility for his crime.'" Appellant's Brief, at 57 (citation omitted). This Court has found, on many occasions, such a contention to constitute a substantial question capable of review. *See, e.g., Commonwealth v. Stewart*, 867 A.2d 589, 592 (Pa. Super. 2005) (holding that a claim asserting "the sentencing court considered improper factors in placing the sentence in the aggravated range ... presents a substantial question on appeal[ ]"). Therefore, we proceed to review the substantive components of his discretionary claim.

Distilled down, Rodriguez claims that he was more severely punished because he maintained his innocence throughout trial. In effect, "the court improperly penalized [him] for refusing to abandon his innocence by imposing an aggravated-range sentence." Appellant's Brief, at 58.

Our standard of review for a challenge to the discretionary aspects of sentencing is as follows:

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

*Commonwealth v. Johnson*, 125 A.3d 822, 826 (Pa. Super. 2015) (citations omitted).

"Section 9721 [of the Sentencing Code] provides in part that 'the

sentence imposed should call for confinement that is consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant.'" *Miller*, 275 A.3d at 535 (quoting 42 Pa.C.S. § 9721(b)). Moreover, the sentencing court, which is present at the hearing and observes all witnesses and the defendant firsthand, "is in a superior position to review the defendant's character, defiance or indifference, and the overall effect and nature of the crime." *Commonwealth v. Lekka*, 210 A.3d 343, 353 (Pa. Super. 2019); *Miller*, 275 A.3d at 535. Where, as here, the sentencing court had a presentence investigation report, we can "presume that the sentencing judge was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors." *Commonwealth. v. Devers*, 546 A.2d 12, 18 (Pa. 1988); *Commonwealth v. Ventura*, 975 A.2d 1128, 1135 (Pa. Super. 2009).

At sentencing, the court stated:

I have had an opportunity to review the presentence investigation and the [Commonwealth's] sentencing memorandum, heard everything that everyone had to say, have taken everything into consideration, and I have a few things that I want to say.

Obviously, this is a very incredibly difficult case, particularly for [Keltner]. The crime was incredibly callous and heinous. I think it is compounded by the fact that I don't believe … Rodriguez has taken responsibility for his crime.

You claim you were forced to run over this young woman, but the jury didn't believe you. You left her for dead, bleeding, and broken in a secluded area. You didn't get any help for her.

- 17 -

You didn't back up the car and drive around her. You caused her enumerable and irreparable long-term damage.

I do believe that based on the testimony of the doctor in this case that the majority of the severe damage to [Keltner] was caused by the car. As such, I am going to find that the car was a deadly weapon.

Despite the fact that you left [Keltner] for dead, she survived, and I have a lot of respect for her. . . .

I think this crime is very impactful on society in that it was so callous and senseless. There was no need for it. There was no apparent motive for it, and that makes the impact on society very severe because it is a scary thing for people to think that things like this happen in the world.

I do think that [Rodriguez] has some rehabilitative potential because he is so young, but based on the nature of the case, I don't know how much.

Sentencing Hearing, 5/31/22, at 37-38.

We agree with Rodriguez that a sentencing court errs when it exclusively relies on "silence at sentencing … to establish [a] lack of remorse[.]" ***Commonwealth v. Bowen***, 975 A.2d 1120, 1128 (Pa. Super. 2009). However, we also note that in imposing an aggravated-range sentence, the lower court is permitted to consider *any* legal factor. ***See Commonwealth v. Stewart***, 867 A.2d 589, 592-93 (Pa. Super. 2005). "The trial court is vested with broad discretion in determining the defendant's sentence since the court is in the best position to view the defendant's character, displays of remorse, defiance or indifference, and the overall effect and nature of the crime." ***Commonwealth v. Begley***, 566 Pa. 239, 780 A.2d 605, 643 (2001) (citation omitted). Moreover, while it cannot be wholly predicated on silence, "[l]ack of

- 18 -

remorse is an appropriate sentencing consideration." *Commonwealth v. Summers*, 245 A.3d 686, 695 (Pa. Super. 2021); *see also Bowen*, 975 A.2d at 1127 (Pa. Super. 2009) ("[T]he trial court may base its findings regarding remorse on ... its own observations of the defendant.").

Even if a sentence is predicated on an impermissible sentencing factor, as long as independently valid reasons exist for imposing an aggravated sentence, it must be affirmed. *See Commonwealth v. P.L.S.*, 894 A.2d 120, 133 (Pa. Super. 2006).

In its opinion, the court explained how this case transcended the "normal" aggravated assault of two people involved in a fight. Trial Court Opinion, 12/14/22, at 20. Instead, this case involved a "helpless young woman [being] shot, r[u]n over with a vehicle, and literally left to die." *Id*. The court also noted that Rodriguez did not attempt to alert anyone to provide Keltner with medical assistance, even when Esteban was no longer physically present with him. Instead, Rodriguez "left Keltner on lying on the side of the road to die; so heavily injured a passerby thought she was a dead animal." *Id*. The court also believed a lesser sentence would "depreciate the seriousness of the crime." *Id*., at 20-21 (delving into the extent of Keltner's injuries). The court then mentioned that it heard testimony from those in support of Rodriguez and those on behalf of Keltner as the victim. *See id*., at 21.

"An aggravated range sentence for [a defendant] will … be justified to

the extent that the individual circumstances of [a] case are atypical of the crime for which [a defendant] was convicted, such that a more severe punishment is appropriate." ***Commonwealth v. Fullin***, 892 A.2d 843, 848 (Pa. Super. 2006). Notwithstanding the court having mentioned that Rodriguez had not appeared to take responsibility for his crime, the court provided myriad, independent support for its determination that an aggravated sentence was warranted. Specifically, the record reflects that the court, in tandem with its consideration of the pre-sentence investigation report, delved into all the necessary factors and considerations that it needed to in order to impose the sentence that it did, particularly highlighting the peculiar heinousness of Rodriguez's use of a vehicle as a weapon against Keltner. ***See*** Sentencing Hearing, 5/31/22, at 37-38. Therefore, we find no abuse of discretion in the crafting of his aggravated-range sentence.

In finding no merit to any of Rodriguez's issues, we affirm his judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

_____
Benjamin D. Kohler, Esq.
Prothonotary

Date: 05/29/2024